[Cite as *State v. Filip*, 2017-Ohio-5622.]

STATE OF OHIO           )           IN THE COURT OF APPEALS

                       )ss:       NINTH JUDICIAL DISTRICT

COUNTY OF MEDINA    )

STATE OF OHIO                          C.A. No.      16CA0049-M

      Appellee

      v.                             APPEAL FROM JUDGMENT
                                       ENTERED IN THE

THEODORE FILIP                     MEDINA MUNICIPAL COURT
                                       COUNTY OF MEDINA, OHIO

      Appellant                   CASE No.     14 TRC 07767

DECISION AND JOURNAL ENTRY

Dated: June 30, 2017

---

CARR, Judge.

{¶1} Defendant-Appellant Theodore Filip appeals from the judgment of the Medina Municipal Court. This Court affirms.

I.

{¶2} On November 26, 2014, around 10:30 p.m., Filip was pulled over for a traffic violation. Because police suspected that Filip was driving under the influence of alcohol, field sobriety tests were administrated. Following which, police arrested Filip and transported him to the Hinckley Police Department. There police unsuccessfully tried to administer a breathalyzer test to Filip. Because police believed that Filip was not actually breathing into the machine, Filip's test was recorded as a refusal.

{¶3} A complaint was filed alleging that Filip violated R.C. 4511.19(A)(1)(a), R.C. 4511.19(A)(2)(b), and R.C. 4511.33. Filip filed a motion to suppress alleging, inter alia, that the field sobriety tests were not conducted in accordance with NHTSA standards and that officers

lacked probable cause to arrest Filip. Following a hearing, the trial court issued an entry denying the motion to suppress. The matter proceeded to a jury trial for the violations of R.C. 4511.19(A)(1)(a) and 45119.19(A)(2), and a bench trial on the marked lanes violation. Filip was found guilty of all counts and was sentenced thereafter.

{¶4} Filip has appealed raising six assignments of error for our review, some of which will be addressed out of sequence to facilitate our analysis.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING FILIP'S MOTION TO SUPPRESS BECAUSE OFFICER HARRISON DID NOT ADMINISTER THE FIELD SOBRIETY TESTS IN SUBSTANTIAL COMPLIANCE WITH THE STANDARDS SET FORTH BY THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION MANUAL [NHTSA].

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING FILIP'S MOTION TO SUPPRESS, BECAUSE OFFICER HARRISON LACKED PROBABLE CAUSE TO ARREST FILIP.

{¶5} In Filip's first two assignments of error, he challenges the denial of his motion to suppress. Filip argues in his first assignment of error that the trial court erred in denying his motion to suppress because the field sobriety tests were not conducted in substantial compliance with NHTSA standards. Specifically, Filip maintains that police failed to comply with the standards in the 2013 NHTSA manual by failing to properly illuminate the stimulus in the horizontal gaze nystagmus test and by administering the walk-and-turn and one-leg-stand tests to Filip even though the officer was aware that Filip had had surgery on both of his knees. In his second assignment of error, Filip argues that police lacked probable cause to arrest him.

{¶6}    A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8.  "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶7}    Sergeant Brett Harrison with the Montville Township Police Department was the sole witness to testify at the suppression hearing.  On November 26, 2014, Sergeant Harrison was working with the Medina County OVI Task Force from approximately 9:00 p.m. until 2:00 a.m. in a marked vehicle.  As he was driving east on Center Road 303, he saw the passenger side tires of a vehicle travel completely over the white fog line by approximately four inches towards the shoulder.  Sergeant Harrison acknowledged that he did not observe any other traffic violations.  At that point, Sergeant Harrison turned on his overhead lights.  Instead of pulling off the road, the vehicle turned into a nearby cemetery and parked partially blocking the entrance.  Prior to pulling in, Filip did indicate his intention to turn, which Sergeant Harrison admitted was an indicator of sobriety.

{¶8}    Sergeant Harrison approached the vehicle and made contact with the driver, Filip.  Sergeant Harrison smelled a strong odor of alcoholic beverage in the car and noticed that Filip's eyes were bloodshot and glossy.  He asked Filip for his license and insurance.  Filip "fumbl[ed] through his wallet * * * for about a minute * * * [a]nd passed over the driver's license[] twice."

Sergeant Harrison also had to ask Filip again for his insurance, but he was not able to produce it. Sergeant Harrison described Filip's speech as "slurred and mush-mouthed." Filip "was a little hard to understand at times." Initially, Filip denied having anything to drink, but after Sergeant Harrison advised Filip that Sergeant Harrison could smell the odor of alcohol coming from the car, Filip stated that he "had a few."

{¶9}     After backup arrived, Sergeant Harrison had Filip exit the vehicle to perform field sobriety tests. Sergeant Harrison acknowledged that Filip exited the vehicle without any problems and did not stumble or sway in walking from his vehicle towards the cruiser. With Filip out of the vehicle, Sergeant Harrison could smell the strong odor of alcohol coming from Filip's person. Sergeant Harrison then administered the horizontal gaze nystagmus, walk-and-turn, and one-leg-stand tests. He conducted the testing on a "big flat level driveway[.]" Sergeant Harrison described that, in addition to his headlights, there were overhead lights at the entrance of the cemetery. He indicated that the "cemetery was fairly well lit." Additionally, he used his flashlight in the tests. Sergeant Harrison instructed Filip on how to perform the tests prior to administering them and also demonstrated the tests where appropriate. Sergeant Harrison testified as to how each test was administered and to his observations of Filip's performance. Sergeant Harrison agreed that Filip had informed him he had knee problems, although Sergeant Harrison could not remember if Filip said he had surgery. Either way, Sergeant Harrison testified that he believed that Filip "said it was awhile ago." Sergeant Harrison indicated that he was taught to be careful when examining individuals with knee problems because knee problems could create false positive results on the walk-and-turn and one-leg-stand tests.

{¶10}  In conducting the horizontal gaze nystagmus test, Sergeant Harrison used a black pen with a blue top. He testified that he was not sure whether the NHTSA manual required the

use of a contrasting stimulus. Sergeant Harrison pointed the flashlight at Filip's chest during the test. He testified that he observed that Filip's eyes lacked smooth pursuit and observed nystagmus at maximum deviation, totaling 4 clues out of a possible 6. He testified that such results would be consistent with someone being over the legal limit of alcohol.

{¶11} In the walk-and-turn test, Sergeant Harrison observed that Filip started doing the test twice prior to Sergeant Harrison finishing the instructions. Filip then counted to 10, but only took 8 steps, when he was supposed to take 9. Filip also lost his balance when he turned. Sergeant Harrison noted 3 out of 8 clues.

{¶12} In the one-leg-stand test, Filip raised his arms above 6 inches and put his foot down three times. At the point, pursuant to the NHTSA manual, Sergeant Harrison terminated the test. He observed 2 of four possible clues. At the conclusion of the field sobriety tests, Sergeant Harrison believed that Filip was impaired.

{¶13} The trial court took judicial notice of the 2013 NHTSA manual, which the State asserted was in effect at the time of the stop, and admitted Defendant's Exhibit A, which purported to be a video of the stop, including the administration of the field sobriety tests.

**Substantial Compliance with NHTSA**

{¶14} "Pursuant to R.C. 4511.19(D)(4)(b), an officer may testify concerning the results of a field sobriety test, and the prosecution may introduce the results of a such a test, if 'the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration[.]'" *State v. George*, 9th Dist. Wayne No. 13CA0036, 2014-Ohio-4123, ¶ 7, quoting R.C. 4511.19(D)(4)(b). Thus, "substantial compliance

with standardized procedures is required in order for the results of field sobriety tests to be admissible." *George* at ¶ 7, citing *State v. Sunday*, 9th Dist. Summit No. 22917, 2006-Ohio-2984, ¶ 20. "'Accordingly, the burden of establishing substantial compliance on the part of the administering officer is on the State [.]'" *George* at ¶ 7, quoting *Sunday* at ¶ 21. "This Court has recognized that while the acceptable testing standards include the NHTSA guidelines, the administering officer need only substantially comply with the standards for any 'reliable, credible, and generally accepted field sobriety test.'" *George* at ¶ 7, quoting *Sunday* at ¶ 21, quoting R.C. 4511.19(D)(4)(b).

{¶15} First, we note that it is not clear that Filip argued below that Sergeant Harrison failed to properly illuminate the stimulus in the horizontal gaze nystagmus test. Filip's counsel generally argued in his motion to suppress that Sergeant Harrison failed to substantially comply with the NHTSA standards for the three tests and, during closing, Filip's counsel stated that "[t]he horizontal gaze nystagmus test was not administered properly or just simply was not administered because of not following the pen, whichever way you want to go there." Filip's counsel, however, never specifically argued that Sergeant Harrison failed to substantially comply with the standards by failing to properly illuminate the pen. *See, e.g., State v. Manso*, 9th Dist. Summit No. 26727, 2014-Ohio-1388, ¶ 7. Nonetheless, Filip's counsel did argue at the hearing that the walk-and-turn and one-leg-stand tests should not have been administered due to Filip's knee problems.

{¶16} More problematic to our review is that the 2013 NHTSA manual and the video[1], which is said to contain the field sobriety testing, are not in our record on appeal. *See State v.*

---

[1] While there is a video exhibit of the stop in the record that was admitted at trial, the video exhibit admitted at the suppression hearing is not in the record. It is possible that the video

*Cooper*, 9th Dist. Medina No. 12CA0067-M, 2013-Ohio-5489, ¶ 12. It was Filip's burden to supply a complete record on appeal. *See State v. Daniel,* 9th Dist. Summit No. 27390, 2014-Ohio-5112, ¶ 5. Under such circumstances, this Court cannot fully evaluate whether Sergeant Harrison complied with the appropriate standards. Thus, we are required to presume regularity in the proceedings and affirm the trial court's judgment on that basis. *See, e.g., State v. Mencini,* 9th Dist. Summit No. 27322, 2015-Ohio-89, ¶ 21; *Cooper* at ¶ 12.

**{¶17}** Filip's first assignment of error is overruled.

**Probable Cause to Arrest**

**{¶18}** "The appropriate legal standard for probable cause to arrest for driving while under the influence of alcohol is whether "'at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.''" *State v. Ray Rogers*, 9th Dist. Wayne No. 16AP00014, 2017-Ohio-357, ¶ 9, quoting *State v. Sayler*, 9th Dist. Medina No. 15CA0094-M, 2016-Ohio-7083, ¶ 12, quoting *State v. Homan*, 89 Ohio St.3d 421, 427 (2000). "This inquiry requires consideration of the totality of the circumstances known to the officer at the time of arrest." *Ray Rogers* at ¶ 9, citing *Sayler* at ¶ 12. "In cases where courts are faced with the question of whether a police officer has probable cause to arrest an individual for operating under the influence, the totality of the circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where the test results must be excluded." *Ray Rogers* at ¶ 9, citing *State v. Washington*, 9th Dist. Lorain No. 11CA010042, 2012-Ohio-1391, ¶ 9, citing *Homan* at 427.

---

admitted at trial contains the same footage as the one admitted at the suppression hearing; however, we cannot make such a presumption on appeal.

{¶19} Here, as discussed above, after pulling Filip over for a traffic violation, Sergeant Harrison noted that there was a strong odor of alcohol coming from the vehicle, that Filip's eyes were bloodshot and glossy, that Filip's speech was "slurred and mush-mouthed[,]" that he was a little difficult to understand at times, and that Filip was fumbling through his wallet and initially passed over his license twice before locating it. Additionally, Filip initially denied having anything to drink but later admitted to having "a few[.]" Sergeant Harrison further indicated that when Filip exited the vehicle, Sergeant Harrison noticed that the strong odor of alcohol was coming from Filip's person. Finally, Sergeant Harrison discussed that Filip exhibited several clues on the three field sobriety tests he performed. In addition, the trial court was able to observe Filip's behavior and performance on the field sobriety tests via the video that is not in this Court's record. *See Cooper*, 2013-Ohio-5489, at ¶ 15.

{¶20} Filip maintains that because crossing the fog line was his only traffic violation and he displayed other behaviors, such as using his turn signal and not stumbling upon exiting his vehicle, which supported the conclusion that he was not intoxicated, the trial court erred in concluding Sergeant Harrison possessed probable cause to arrest him. "This Court has held, however, that an officer need not 'observe erratic driving in order to effectuate an arrest for driving under the influence.'" *State v. Kordich*, 9th Dist. Medina No. 15CA0058-M, 2017-Ohio-234, ¶ 16, quoting *State v. Kurjian*, 9th Dist. Medina No. 06CA0010-M, 2006-Ohio-6669, ¶ 17. "To prove impaired driving ability, the [S]tate can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired." (Internal quotations and citations omitted.) *Kordich* at ¶ 17.

**{¶21}** Given the totality of the circumstances, including the fact that the trial court had before it a video of the stop which is not in our record, we can only conclude that the trial court did not err in finding that Sergeant Harrison possessed probable cause to arrest Filip. *See Cooper,* 2013-Ohio-5489, at ¶ 15; *Kordich* at ¶ 18; *State v. Adams,* 9th Dist. Medina No. 13CA0008-M, 2013-Ohio-4258, ¶ 12-13; *State v. Sunday*, 9th Dist. Summit No. 22917, 2006-Ohio-2984, ¶ 33.

**{¶22}** Filip's second assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN FILIP'S CONVICTIONS.

**{¶23}** In his sixth assignment of error, Filip argues that his convictions are based upon insufficient evidence. While his assignment of error mentions convictions, the body of his arguments focuses solely on whether there was sufficient evidence to conclude that Filip was impaired. We will limit our analysis accordingly.

**{¶24}** When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶25} Filip was found guilty of violating R.C. 4511.19(A)(1)(a) and 4511.19(A)(2). R.C. 4511.19(A)(1)(a) states that, "[n]o person shall operate any vehicle * * * within this state, if, at the time of the operation  * * * [t]he person is under the influence of alcohol * * *." R.C. 4511.19(A)(2) states:

> No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or any other equivalent offense shall do both of the following:
>
> (a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;
>
> (b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

{¶26} At trial, both Sergeant Harrison and Filip testified. Also, a video of the stop was also played for the jury and admitted into evidence. However, the recording had no sound.

{¶27} Sergeant Harrison testified that, on the day of the stop, which was the day before Thanksgiving, he was on duty as part of the Medina County OVI Task Force in the Brunswick and Hinckley areas. Around 10:30 p.m., Sergeant Harrison was driving eastbound on Center Road and saw a tan Ford sedan in front of him. He noticed the vehicle drift a couple times towards the centerline, but it did not touch the centerline. However, Sergeant Harrison then observed the vehicle cross over the white fog line with its passenger side tires for several feet before the vehicle reentered into the lane. Sergeant Harrison testified that both the weaving and crossing the fog line could be indicators of possible impaired driving.

{¶28} After the vehicle crossed the fog line, Sergeant Harrison decided to initiate a traffic stop. He put on his overhead lights and the driver turned left into a cemetery and parked

blocking the entrance. Sergeant Harrison approached the driver, who was Filip, and advised him why he had been stopped. Sergeant Harrison "could smell the strong odor of an alcoholic beverage coming from the driver's window[] and [] could also see that his eyes at that point were bloodshot and glossy." Sergeant Harrison described Filip's speech as slurred, "mush-mouthed," and "mumbled." When he asked Filip if he had anything to drink, Filip initially denied it, but later acknowledged after Sergeant Harrison told Filip that he could smell alcohol coming from the car, that he had had a few drinks at his brother's house. Sergeant Harrison asked Filip for his license and proof of insurance. Filip fumbled through his walled and passed over his license twice before producing it to Sergeant Harrison. Sergeant Harrison had to then ask for Filip's insurance information again as "it was almost like he didn't remember that [Sergeant Harrison] asked him." Sergeant Harrison noted that such could be a memory issue associated with alcohol use.

{¶29} Sergeant Harrison then called for backup and ran Filip's information through the computer. Once backup arrived, Sergeant Harrison had Filip exit the vehicle to perform field sobriety tests. Sergeant Harrison described the tests for the jury, how he instructed Filip to perform the tests, and what he was looking for with respect to each test. As to the horizontal gaze nystagmus test, he noted that he was looking for nystagmus, which he described as an "involuntary jerking of the eye[]" that "is present mostly with the introduction of alcohol into the body." However, he acknowledged on cross-examination that nystagmus can occur for many reasons unrelated to alcohol consumption. He stated that the test is designed elicit "clues" which he stated are "what these tests are going to show if there is positive impairment[.]" Sergeant Harrison observed that Filip demonstrated 4 of 6 clues in the horizontal gaze nystagmus test. He testified, over objection, that those results indicated that there was an 88% chance that Filip was

over the legal limit for alcohol consumption. On cross-examination, Sergeant Harrison acknowledged that, only the vertical nystagmus test, a test that elicited zero clues from Filip, was designed to indicate significant alcohol impairment. He agreed that the horizontal gaze nystagmus tests were just designed to predict whether the blood alcohol will be above a certain level.

{¶30} Sergeant Harrison testified that he next had Filip perform the walk-and-turn test, which he described as a divided attention test. He noticed that Filip started the test twice before Sergeant Harrison told him to do so, he took 8 steps instead of 9 and counted to 10, and he lost his balance on the turn and stumbled with his feet a little bit. Sergeant Harrison documented 3 clues out of 8. Sergeant Harrison testified over objection that if 2 out of 8 clues are displayed, there is a 79% chance that the person is at or above the legal limit.

{¶31} Finally, Sergeant Harrison administered the one-leg-stand test. During that test, he observed 2 clues out of 4: Filip raised his arms above 6 inches and put his foot down four times. This test was stopped prior to completion because Sergeant Harrison was concerned about Filip's balance and did not want him to fall over. Over objection, Sergeant Harrison testified that, if 2 out of 4 clues are observed, there is an 83% chance the person is at or above the legal limit.

{¶32} Following the field sobriety tests, Sergeant Harrison believed that Filip was impaired by alcohol and unable to continue driving. When asked about Filip's mental processes, Sergeant Harrison opined that Filip's reactions were a little slow in his interactions with Sergeant Harrison. Sergeant Harrison thereafter placed Filip under arrest and transported him to the Hinckley Police Department.

{¶33} At the police department, Filip was read a BMV advisement and informed of the consequences of a refusal of a breath test. Filip indicated that he understood the advisement and that he would take the breath test. Another officer thereafter administered the test while Sergeant Harrison was in the room observing. Sergeant Harrison testified that on the first attempt, Filip spit into the machine instead of breathing into it. The officers kept instructing Filip to blow into the machine, but after a certain period of time the machine timed out. The other officer reset the machine and again offered Filip the opportunity to take the test. Filip was advised that if he did not blow into the machine the second time, it would be counted as a refusal. The second time, Filip acted like he was blowing into the machine but no air was going into it. Officers told him that no air was going in and that he must be holding his breath, but Filip insisted the machine was not working as he was blowing into it. Sergeant Harrison told Filip that he knew air was not going in because there was no audible tone. The machine timed out again and it was noted as a refusal. Sergeant Harrison testified that Filip had a prior conviction for driving while under the influence from 2003 and stated that, because of that, Filip was not supposed to refuse a breath test, as doing so would be an additional offense.

{¶34} Sergeant Harrison reaffirmed that he thought Filip was impaired based upon the totality of the circumstances including the marked lanes violation, pulling in to the cemetery instead of pulling off on the side of the road, the way he parked at the cemetery, the admission of alcohol consumption, the odor of alcohol from the car, his bloodshot, glossy eyes, slurred speech, the clues on the field sobriety test, and the way he acted during the breath test. However, he later acknowledged on cross-examination that it was safer for Filip to pull into the cemetery than to park on the shoulder.

{¶35} On cross-examination, defense counsel went through with Sergeant Harrison all the indicators that would tend to show Filip was not impaired, including, inter alia, that Filip was maintaining his speed while driving, that he used his turn signal, and that he was polite and cooperative. It was noted that the clues indicating sobriety far outnumbered the clues indicating impairment. Additionally, Sergeant Harrison agreed that certain facts, such as Filip's weaving in his own lane and the slow reactions times, were not included in his report. Sergeant Harrison also agreed that the results of the field sobriety tests were designed to predict blood alcohol level at or above .08 and not to predict whether an individual is impaired. Nonetheless, Sergeant Harrison pointed out that observations made during the tests could indicate impairment.

{¶36} Filip testified that, 6 days prior to the traffic stop, he had a dental procedure that resulted in an infection and caused it to be painful to speak. He additionally averred that he had prior knee surgeries due to an injury when he was younger and had arthritis. He indicated it was difficult to stand on one leg and that being on his feet and kneeling made him sore.

{¶37} Filip asserted at trial that he was not impaired on the night of the traffic stop. He testified that he was driving from his brother's house and had had only "a swig of beer" because drinking it hurt his mouth. Because he only had such a small amount, he initially told Sergeant Harrison that he did not have anything to drink. Filip denied ever telling Sergeant Harrison that he had a few drinks, but did admit to telling him he had a beer. Filip maintained that he passed up his license twice because he was trying to find his insurance card. He also averred that he was having difficulties with the breath machine because of the pain from the infection, but nonetheless asserted that he did blow into the machine. Filip testified that he made the officer aware of both his knee and mouth problems.

**{¶38}** "[I]n DUI prosecutions, the state is not required to establish that a defendant was actually impaired while driving, but rather, need only show an impaired driving ability." (Internal quotations and citations omitted.)  *State v. Peters*, 9th Dist. Wayne No. , 2008-Ohio-6940, ¶ 5.  "To prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired."  (Internal quotations and citations omitted.)  *State v. Wilson,* 9th Dist. Lorain No. 12CA010263, 2014-Ohio-3182, ¶ 15. "Furthermore, [v]irtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated."  (Internal quotations and citations omitted.)  *State v. Hess,* 9th Dist. Wayne No. 12CA0064, 2013-Ohio-4268, ¶ 8.  "A driver of a motor vehicle is considered under the influence of alcohol when his physical and mental ability to act and react are altered from the normal because of the consumption of alcohol."  (Internal quotations and citations omitted.)  *Peters* at ¶ 6.

**{¶39}** After viewing the evidence in  a light most favorable to the State, we conclude that sufficient evidence was presented, if believed, whereby a jury could find beyond a reasonable doubt that Filip operated a vehicle while under the influence of alcohol.  Sergeant Harrison testified to observing Filip weave in his lane and then crossing the fog line.  When he approached the car, he noticed that Filip's eyes were bloodshot and glossy, that his speech was slurred, and that a strong odor of alcohol came from the car.  Sergeant Harrison noted that Filip seemed to have difficulty finding his license, which he passed over twice, and that Filip seemed to have forgotten that he needed to produce his insurance information, as Sergeant Harrison had to remind him about it.  Filip initially denied having any alcohol, but then later admitted to having a few drinks after being confronted with the fact that the officer smelled alcohol.  Filip's

performance on the field sobriety tests was also discussed, which included observations that Filip miscounted and lost his balance during the walk-and-turn test and that, during the one-leg-stand test, Sergeant Harrison stopped the test early because he was concerned about Filip's balance and did not want him to fall over. Sergeant Harrison also commented that Filip's reactions seemed to be a little slow. The jury also heard Sergeant Harrison opine that Filip was impaired and had the opportunity to view the video of the stop. Finally, Filip's refusal to take the breath test could also be viewed as probative of his impairment. *See State v. Allen,* 10th Dist. Franklin No. 09AP-853, 2010-Ohio-4124, ¶ 32, citing *Maumee v. Anistik,* 69 Ohio St.3d 339 (1994); *State v. Franke,* 9th Dist. Medina No. 2490-M, 1996 WL 539182, *3 (Sept. 25, 1996) ("Franke's refusal to take a chemical breath test may have probative value on the question of whether he was intoxicated at the time of his refusal."); *see also State v. Crutchfield,* 9th Dist. Lorain Nos. 10CA009931, 10CA009932, 10CA00933, 2011-Ohio-6681, ¶ 12 (concluding that sufficient evidence of impairment existed when the officer observed slurred speech, bloodshot, glassy eyes, the smell of alcohol, and there was evidence that the defendant failed the horizontal gaze nystagmus test). Based on the foregoing, we conclude there was sufficient evidence presented that Filip was impaired.

**{¶40}** Filip's sixth assignment of error is overruled.

### ASSIGNMENT OF ERROR V

FILIP'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

**{¶41}** Filip argues in his fifth assignment of error that his convictions are against the manifest weight of the evidence. While his stated assignment of error addresses manifest weight, the text of his argument again raises the issue of whether there was sufficient evidence of impairment.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶42} Filip argues that "there was a significant amount of testimony as to [his] sober behaviors." However, he has not further argued or explained why his convictions are against the manifest weight of the evidence or expressly raised any issues of credibility. *See* App.R. 16(A)(7). Given Filip's limited argument, and after a thorough review of the record, we cannot say that the jury lost its way in finding Filip guilty.

{¶43} Filip's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN FAILING TO ALLOW FILIP TO CHALLENGE OFFICER HARRISON'S TESTIMONY REGARDING SPECULATION AS TO FILIP'S BLOOD ALCOHOL WITH THE OTHER STUDIES CITED IN THE NHTSA MANUAL.

{¶44} Filip argues in his third assignment of error that the trial court erred in failing to allow defense counsel to question Sergeant Harrison about "other studies cited within the 2013 NHTSA manual."

**{¶45}** "The decision whether to admit or exclude evidence lies in the sound discretion of the trial court. This Court, therefore, reviews the trial court's decision regarding the admission or exclusion of evidence under an abuse of discretion standard of review." *State v. Moultry*, 9th Dist. Summit No. 25065, 2010-Ohio-3010, ¶ 7.

**{¶46}** Here, after Sergeant Harrison discussed the statistical probability an individual would be at or above the legal limit based upon the person's performance on field sobriety tests, on cross-examination, Filip's counsel sought to question Sergeant Harrison about studies that are purportedly referenced in the 2013 NHTSA manual. The trial court and counsel reviewed the manual and discussed whether defense counsel could cross-examine Sergeant Harrison using the "Florida study" and/or other studies. After reviewing the Florida study, the trial court concluded that it would not allow the questioning because it would be misleading to the jury, outside the scope of the Sergeant Harrison's expertise, and because the materials were not disclosed to the State prior to trial.

**{¶47}** While the trial court took judicial notice of the 2013 NHTSA manual, it is not in our record on appeal. In addition, the studies referenced above, including the one reviewed by the trial court, are not in our record. The obligation to ensure that the record on appeal contains all matters necessary to allow this Court to resolve the issues on appeal lies with the appellant. *See* App.R. 9. "We have consistently held that, where the appellant has failed to provide a complete record to facilitate appellate review, this Court is compelled to presume regularity in the proceedings below and affirm the trial court's judgment." *State v. Daniel*, 9th Dist. Summit No. 27390, 2014-Ohio-5112, ¶ 5. Because the documents the trial court reviewed in reaching its decision are not in our record, Filip has not demonstrated error, and we are required to presume regularity in the trial court's decision.

**{¶48}** Filip's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING OFFICER HARRISON TO SPECULATE AS TO FILIP'S BLOOD ALCOHOL CONTENT WITHOUT EXPERT TESTIMONY TO CORRELATE BLOOD ALCOHOL CONTENT TO IMPAIRMENT.

**{¶49}** Filip argues in his fourth assignment of error that the trial court erred in allowing Sergeant Harrison to speculate as to Filip's blood alcohol content without any expert testimony that would correlate blood alcohol content to impairment. While his assignment of error mentions plain error, the body of his argument asserts that he objected to the testimony.

**{¶50}** During direct examination by the State, Sergeant Harrison testified over objection that the presence of 4 out of 6 clues on the horizontal gaze nystagmus test would indicate that there was an 88% chance that the person would be at or over the .08 legal limit. Also, over objection, Sergeant Harrison testified that if 2 out of 8 clues were present on the walk-and-turn test, there would be a 79% chance the person was at or over the legal limit, and if 2 out of 4 clues on the one-leg-stand test were present, there would be an 83% likelihood that the person was at or above the legal limit of .08. The only stated objection was relevancy. Filip did not argue in the trial court that such testimony would only be admissible if expert testimony were offered. Filip asserts that the testimony was inadmissible because impairment is not dependent on blood alcohol level and the issue before the jury was whether Filip was impaired.

**{¶51}** On appeal, Filip has pointed this Court to case law that notes the problematic nature of allowing this type of testimony in cases similar to this one. *See State v. Grizovic*, 177 Ohio App.3d 161, 2008-Ohio-3162 (1st Dist.). While we are troubled by the admission of this evidence, even if were to conclude it was inadmissible, it is difficult to conclude that the State's

elicitation of this testimony prejudiced Filip, when Filip's counsel revisited Sergeant Harrison's testimony on cross-examination and confirmed the probabilities detailed above.[2]

{¶52} Further, the possibility that the jury would have used those statistics for an improper purpose was minimized when defense caused Sergeant Harrison to acknowledge that the three field sobriety tests were designed to predict blood alcohol level, not to test impairment, and when counsel reminded the jury of the same during closing argument. Finally, the trial court specifically instructed the jury that,

> [t]he question is not how much alcohol would [a]ffect an ordinary person. The question is what affect did any alcohol consumed by the defendant have on him at the time and place involved? The amount of alcohol in the defendant's body is not the question. It is the effect of whatever alcohol was present. That is the question.
>
> If the consumption of alcohol so [a]ffected the nervous system, brain or muscles of the defendant so as to impair to a noticeable degree his ability to operate the vehicle, then the defendant was under the influence of alcohol.
>
> The definition of under the influence does not require proof by a chemical test, any particular concentration of alcohol in the defendant's blood breath or urine.

{¶53} Given all of the foregoing, we cannot conclude that the admission of this evidence on direct examination prejudiced Filip's substantial rights. *See* Crim.R. 52(A).

{¶54} Filip's fourth assignment of error is overruled.

III.

{¶55} Filip's assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

---

[2] Defense counsel did so immediately prior to attempting to introduce testimony about the other studies discussed in the third assignment of error.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

JOSEPH C. PATITUCE and MEGAN M. PATITUCE, Attorneys at Law, for Appellant.

GREGORY A. HUBER, Prosecuting Attorney, for Appellee.