[Cite as *State v. Frederick*, 2018-Ohio-1566.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

ANTHONY A. FREDERICK

    Appellant

C.A. No.    15CA0107-M

APPEAL FROM JUDGMENT
ENTERED IN THE
WADSWORTH MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE No.    15TRC02683-A

DECISION AND JOURNAL ENTRY

Dated: April 23, 2018

CARR, Judge.

{¶1} Defendant-Appellant Anthony A. Frederick appeals, pro se, from the judgment of the Wadsworth Municipal Court. This Court affirms.

I.

{¶2} Following a June 13, 2015 traffic stop, a complaint was filed against Frederick alleging that he violated R.C. 4511.19(A)(1)(a) (operating a vehicle while under the influence of alcohol ("OVI")), R.C. 4511.19(A)(2) (OVI with a prior OVI conviction in the past 20 years and refusing to take a chemical test), R.C. 4510.14 (driving under OVI suspension), and R.C. 4511.33 (failing to drive within marked lanes). During the course of the proceedings, Frederick opted to represent himself. Frederick filed a motion to suppress and a hearing was held. The trial court denied Frederick's motion in a written entry. The matter proceeded to a jury trial at which Frederick had the assistance of stand-by counsel. The jury found Frederick guilty of the OVI charges and driving under suspension. The trial court found Frederick guilty of the marked

lanes violation and ultimately sentenced him. Frederick moved for a stay of the judgment and sentence; it does not appear that that motion was ruled upon. Frederick has timely appealed.

II.

{¶3} While Frederick's brief on appeal contains a table of contents which states that the brief contains a page containing a list of his assignments of error, that page is not contained in his brief that was filed in this Court. *See* App.R. 16(A)(3). The argument section of his brief also does not reproduce his assignments of error nor is it well delineated into distinct arguments; oftentimes, it is quite difficult to follow. Nonetheless, this Court will attempt to address the issues it is able to decipher to the extent the briefing warrants.

{¶4} With respect to pro se litigants, this Court has observed:

> [P]ro se litigants should be granted reasonable leeway such that their motions and pleadings should be liberally construed so as to decide the issues on the merits, as opposed to technicalities. However, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that he remains subject to the same rules and procedures to which represented litigants are bound. He is not given greater rights than represented parties, and must bear the consequences of his mistakes. This Court, therefore, must hold [pro se appellants] to the same standard as any represented party.

*State v. Taylor*, 9th Dist. Lorain No. 14CA010549, 2014-Ohio-5738, ¶ 5.

**Reasonable Suspicion**

{¶5} It appears that Frederick argues that the trooper lacked reasonable suspicion to stop Frederick's vehicle. Frederick seems to assert that he did not cross the white fog line and that the video supports his claim.

{¶6} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio

St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶7} "The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution proscribe unreasonable searches and seizures. To justify an investigative stop, an officer must point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Kordich,* 9th Dist. Medina No. 15CA0058-M, 2017-Ohio-234, ¶ 7, quoting *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "In evaluating the facts and inferences supporting the stop, a court must consider the totality of the circumstances as 'viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *Kordich* at ¶ 7, quoting *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988). "This Court has repeatedly recognized that '[a]n officer may stop a vehicle to investigate a suspected violation of a traffic law.'" *Kordich* at ¶ 7, quoting *State v. Slates*, 9th Dist. Summit No. 25019, 2011-Ohio-295, ¶ 23. "Where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid[.]" (Internal quotations and citations omitted.) *State v. Freeman*, 9th Dist. Summit No. 27617, 2015-Ohio-2501, ¶ 10.

{¶8} At the suppression hearing, Trooper Jared Haslar with the Ohio State Highway Patrol testified along with Frederick. At the time of the hearing, Trooper Haslar had been with the Ohio State Highway Patrol for four and one half years and had worked for other police

departments for four years prior to that. Around 1:00 a.m. on June 13, 2015, Trooper Haslar was patrolling in a marked vehicle on State Route 57 in Wadsworth. Trooper Haslar noticed a truck in front of him drifting within its lane and saw the right tires travel over the right white fog line. The vehicle corrected and continued to drift within its lane and Trooper Haslar again observed the right tires of the vehicle cross over the white fog line. Trooper Haslar then initiated a traffic stop. Trooper Haslar came to discover that the driver of the vehicle was Frederick. When Trooper Haslar turned on his overhead lights, the previous approximately 90 seconds of video was stored. Trooper Haslar testified that only the second violation was caught on video. Portions of the video were played at the hearing and the trial court reviewed it prior to ruling on the motion to suppress.

{¶9} In concluding that Trooper Haslar possessed reasonable suspicion, the trial court found Trooper Haslar's testimony credible. The trial court stated that upon reviewing the video,

> [t]he DVD does show that defendant's vehicle does move over to the right and by the tape it is either on or over the fog line. The trooper testified from his view it was clear that the tire went over the right fog line on that occasion. The trooper also testified that prior to the camera being activated, the defendant went over the right fog line. Upon viewing the video, it may be hard to see whether or not the vehicle was on or over, however, the trooper testified in real time the defendant did go over it. Upon viewing the video, the Court finds it does not dispute the trooper's testimony and therefore, the Court will give the trooper the benefit of the doubt and find that the trooper's testimony is credible and finds the defendant did go over the right fog line, thus failing to drive within marked lanes. Therefore, the Court finds the trooper did have reasonable, articulable suspicion to stop defendant's vehicle.

{¶10} The footage on the DVD is somewhat grainy and it is difficult to say with certainty from only watching the video whether Frederick's tires crossed the fog line. However, the trial court found Trooper Haslar's testimony credible and the trial court was in the best position to make such determinations. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. In light of the trial court's factual finding that Frederick crossed the fog line, and Frederick's

limited argument on appeal, we cannot say that the trial court erred in concluding that Trooper Haslar possessed reasonable suspicion that Frederick committed a traffic violation, thereby justifying a traffic stop. *See Kordich,* 2017-Ohio-234, at ¶ 7.

**Horizontal Gaze Nystagmus Test**

{¶11} Frederick also appears to challenge the trial court's failure to suppress the results of the horizontal gaze nystagmus test.

{¶12} "Pursuant to R.C. 4511.19(D)(4)(b), an officer may testify concerning the results of a field sobriety test, and the prosecution may introduce the results of a such a test, if 'the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration[.]'" *State v. Filip*, 9th Dist. Medina No. 16CA0049-M, 2017-Ohio-5622, ¶ 14, quoting *State v. George*, 9th Dist. Wayne No. 13CA0036, 2014-Ohio-4123, ¶ 7, quoting R.C. 4511.19(D)(4)(b).

{¶13} At the suppression hearing, the trial court took judicial notice of the 2013 National Highway Traffic Safety Administration ("NHTSA") manual. However, that manual is not in our record. *See State v. Daniel*, 9th Dist. No. 27390, 2014-Ohio-5112, ¶ 5. At the hearing, Trooper Haslar discussed how he conducted the test, what he was looking for, and stated that he had conducted the test in compliance with the NHTSA manual. While, in his brief, Frederick has set forth a few pages of the trooper's testimony concerning the test, Frederick has not explained how that testimony evidences that the trooper failed to conduct the test in substantial compliance with the NHTSA manual. *See* App.R. 16(A)(7). In light of Frederick's

limited argument on appeal, he has failed to demonstrate that the trial court erred in denying his motion.

**Hearsay**

{¶14} Frederick additionally appears to argue that the trial court abused its discretion in admitting hearsay. Frederick only points to one example of alleged hearsay that occurred during the jury trial. However, Frederick did not object to the admission of that testimony, and, thus, has forfeited all but plain error. *State v. Maple,* 9th Dist. Summit No. 25313, 2011-Ohio-1216, ¶ 12. Further, Frederick has not developed a plain error argument on appeal, and we decline to do so on his behalf. *Id.*

**Sufficiency and Manifest Weight**

{¶15} Frederick appears to assert that the State presented insufficient evidence for the jury to find him guilty of OVI and for the trial court to find he committed a marked lanes violation. While Frederick mentions manifest weight, it appears that he actually challenges sufficiency. In so doing, he appears to only assert that there was a lack of evidence that his vehicle even touched the fog line and that there was no evidence that he was impaired. Our discussion will be accordingly limited to those two narrow issues. To the extent Frederick may be arguing manifest weight, we conclude his argument is underdeveloped and decline to further address it. *See* App.R. 16(A)(7).

{¶16} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to

determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶17} At trial, only Trooper Haslar testified. On June 13, 2015, around 1:00 a.m., Trooper Haslar was patrolling State Route 57 in Wadsworth when he observed a truck in front of him, which he would later determine was driven by Frederick, drifting back and forth within its lane. He then saw the right tires travel over the right white fog line. The vehicle corrected and then drifted back into its lane and continued to drift back and forth. Sometime thereafter, Trooper Haslar observed the vehicle cross the white fog line again with its right tires and then drifted back into the lane and continued to drift back and forth within the lane. Trooper Haslar then initiated a traffic stop. The dash cam video of the stop was also played at trial. Trooper Haslar explained that the camera used a wide-angle lens which was designed to capture what was happening directly in front of the police car. Thus, Trooper Haslar testified that his view of the truck was better than the video's view.

{¶18} The truck's movements within the lane and out of the lane made Trooper Haslar suspicious that Frederick may have been impaired. Trooper Haslar also noted that the vehicle was slow to pull over. In his experience most people tended to pull over when he turned on his overhead lights; however, Frederick did not pull over until after Trooper Haslar turned on his siren as well.

{¶19} Trooper Haslar approached the driver side of the vehicle and asked for Frederick's license. Two other occupants were in the vehicle. Trooper Haslar advised Frederick of the reason for the stop. Initially, Frederick told Trooper Haslar that Frederick was avoiding

something in the road, but later asserted that he did not commit any violations. Trooper Haslar observed that Frederick's "movements were extremely lethargic when he was trying to retrieve his driver's license[,]" noticed a strong odor of an alcoholic beverage emanating from inside the vehicle, and noted that Frederick's eyes were bloodshot and glassy. Frederick was unable to produce a license and ultimately the trooper discovered Frederick was subject to a license suspension due to a prior OVI conviction. Trooper Haslar also noticed a Bud Light beer can in a cup holder; Frederick claimed that it was an ashtray, but Trooper Haslar found beer inside the can.

{¶20} Trooper Haslar asked Frederick to step out of the vehicle and Frederick became confrontational and demanded to know why he had to do so. After Frederick was out of the vehicle, Trooper Haslar could smell a strong odor of an alcoholic beverage coming from Frederick. In light of Frederick's response, Trooper Haslar then requested backup. Trooper Haslar asked Frederick how much he had to drink and Frederick repeatedly denied any alcohol consumption.

{¶21} After backup arrived, Trooper Haslar began the field sobriety testing. Trooper Haslar observed nystagmus during both the horizontal gaze nystagmus testing and the vertical nystagmus testing. During the walk-and-turn test, Trooper Haslar observed six of eight clues, which included that Frederick stepped out of position, stopped during the steps to steady himself, and did not always touch heel-to-toe as instructed. Trooper Haslar observed three out of four clues during the one-leg stand test; he observed Frederick sway while balancing, put his foot down, and raise his hands up over six inches from his sides. At this point, Trooper Haslar placed Frederick under arrest and Frederick was ultimately transported to a police station. Frederick refused to submit to breath testing and insisted that he was "having a lack of oxygen." Trooper

Haslar asked if Frederick needed medical attention and Frederick responded affirmatively. When EMS arrived, they examined Frederick and determined that he was fine; however, Frederick insisted on going to the hospital.

{¶22} "[I]n DUI prosecutions, the state is not required to establish that a defendant was actually impaired while driving, but rather, need only show an impaired driving ability." *Filip,* 2017-Ohio-5622, at ¶ 38, quoting *State v. Peters*, 9th Dist. Wayne No. 08CA009, 2008-Ohio-6940, ¶ 5. "To prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired." *Filip* at ¶ 38, quoting *State v. Wilson,* 9th Dist. Lorain No. 12CA010263, 2014-Ohio-3182, ¶ 15. "A driver of a motor vehicle is considered under the influence of alcohol when his physical and mental ability to act and react are altered from the normal because of the consumption of alcohol." *Filip* at ¶ 38, quoting *Peters* at ¶ 6.

{¶23} After reviewing the record in a light most favorable to the prosecution, we conclude that there was sufficient evidence that Frederick crossed the fog line, particularly in light of Trooper Haslar's testimony. Moreover, we determine there was sufficient evidence that Frederick had an impaired driving ability. There was testimony that Frederick was drifting in his lane, crossed the fog line on two occasions, was slow to pull over, had bloodshot and glassy eyes, and was lethargic in looking for his license. Additionally, Trooper Haslar testified that there was a strong odor of alcohol emanating from Frederick's person and there was an open can of beer found in the car. Trooper Haslar detailed the field sobriety testing and the clues that he observed that would support impairment. Finally, there was evidence that Frederick refused to undergo breath testing, which this Court has concluded can be viewed as probative of

impairment. *See Filip* at ¶ 39. Given the foregoing, and in light of Frederick's limited argument, we cannot say that his convictions are based on insufficient evidence.

**Judicial Bias**

{¶24} Next, it appears that Frederick argues that the trial judge was biased against him based upon comments made at a status hearing about the dangers of self-representation and during closing argument. Frederick has not asserted that his due process rights were violated at trial because of any bias nor has he developed any argument concerning bias. *See State v. Powell*, 9th Dist. Lorain No. 12CA010284, 2017-Ohio-4030, ¶ 9; *see* App.R. 16(A)(7). To the extent Frederick might be arguing that the trial judge should have been disqualified, Frederick's remedy was to file an affidavit of disqualification; that matter is not properly reviewable by this Court. *See* R.C. 2701.031; *see also Powell* at ¶ 13. Accordingly, Frederick has not demonstrated error.

**Alleged Conflicts Between the Audio Recording and the Written Transcript**

{¶25} To the extent that Frederick may be asserting that the transcripts do not accurately reflect the audio recordings, we conclude that Frederick has not utilized the appropriate mechanism to address this perceived error.

{¶26} It is Frederick's burden to provide the record on appeal. *Stickney v. Stickney*, 9th Dist. Medina No. 14CA0099-M, 2016-Ohio-3379, ¶ 19. App.R. 9 details the methods of providing the record on appeal. Frederick did not utilize any of the alternate methods provided therein. This Court has concluded that, "[a]lthough an appellate court can order correction or supplementation of the record if the parties agree to the proposed change, the court of appeals cannot resolve disputes about the trial court's record in the course of an appeal." (Internal quotations and citations omitted.) *Id.* at ¶ 20. Given Frederick's failure to utilize the appropriate

mechanisms to correct any perceived errors in the transcript, Frederick has not demonstrated error.

**{¶27}** Frederick's arguments are overruled.

III.

**{¶28}** The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ANTHONY A. FREDERICK, pro se, Appellant.

THOMAS J. MORRIS, Assistant Law Director, for Appellee.