[Cite as *State v. Robertson*, 2012-Ohio-2955.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |  |
|---|---|---|---|
|  | : | JUDGES: |  |
| STATE OF OHIO | : | W. Scott Gwin, P.J. |  |
|  | : | John W. Wise, J. |  |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |  |
|  | : |  |  |
| -vs- | : | Case No. 11CA0046 |  |
|  | : |  |  |
|  | : |  |  |
| SHARI ROBERTSON | : | O P I N I O N |  |
| Defendant-Appellant |  |  |  |


CHARACTER OF PROCEEDING:        Criminal Appeal from Mansfield
                                Municipal Court Case No.
                                2008 TRC 9711

JUDGMENT:                       Affirmed In Part and Vacated In Part

DATE OF JUDGMENT ENTRY:         June 27, 2012

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

SHARON M. WESSELMAN                     CASSANDRA J.M. MAYER
Assistant Law Director                  234 Park Avenue West
City of Mansfield                       Mansfield, Ohio  44902
30 North Diamond Street
Mansfield, Ohio  44902

JOHN D. STUDENMUND
Renwick, Welsh & Burton
9 North Mulberry Street
Mansfield, Ohio  44902

*Edwards, J.*

{¶1} Appellant, Shari Robertson, appeals a judgment of the Mansfield Municipal Court convicting her of driving while intoxicated (R.C. 4511.19(A)(1)(a)) and driving outside marked lanes (R.C. 4511.33). Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶2} At approximately 2:00 a.m. on October 4, 2008, Captain Christopher Zurcher of the Ohio State Highway Patrol observed appellant make a wide turn in the City of Mansfield. Appellant's vehicle traveled up on to the curb and nearly struck a street sign. Captain Zurcher then observed appellant attempt to pass a car on the left, but her vehicle remained 2-3 feet in the right lane, nearly striking the other car, which had to move to the right to allow appellant to pass. He observed appellant driving partially in the wrong lane for several hundred feet.

{¶3} Captain Zurcher activated his lights. Appellant did not react. He followed her for about a tenth of a mile before using his air horn. Appellant still did not react. Appellant was weaving inside her lane, but did not go left of center.

{¶4} When Captain Zurcher finally hit his siren to get appellant's attention, she swerved to the right, and stopped, nearly hitting a pole. Captain Zurcher approached her car and observed her manipulating a cell phone. When he knocked on her window, appellant signaled to him to hold on and finished with her phone. She apologized for the delay and explained that she was having an argument with a friend. Captain Zurcher noted that appellant appeared to have been crying.

{¶5} Captain Zurcher noticed a very strong odor of alcohol about appellant. Her eyes were bloodshot and her speech was slurred. She handed him her badge

which indicated that she was a Mansfield police officer. Captain Zurcher said to appellant, "You just put both of us in one hell of a position." Tr. 45.

{¶6} While walking to the patrol car, the officer noticed that appellant walked with a slow and careful gait. She admitted that she had consumed 4-5 alcoholic beverages that evening.

{¶7} The officer administered the horizontal gaze nystagmus test (HGN) in his police cruiser. Appellant exhibited all six clues. Appellant refused all other field sobriety tests.

{¶8} Appellant was taken to the Highway Patrol Post, where she refused a breath alcohol test. Trooper Scott Wolford who was at the station at the time noticed a strong odor of alcohol on appellant's breath.

{¶9} Appellant was charged with driving while intoxicated and a marked lanes violation. She filed a motion to suppress and/or limit the use of evidence. The court held a hearing on the issue of whether to suppress the HGN test results. The court overruled the motion to suppress.

{¶10} The case proceeded to jury trial in the Mansfield Municipal Court on March 23, 2011. Appellant testified at trial that during the evening hours of October 3, 2008, she had been arguing with a friend by text message. Wanting to get out of the house, she went to the Red Fox Tavern at about 8:40 p.m. where she drank two Bud Lites and talked with friends. She stayed until about 10:50, when she left and went to another bar. At the second bar she drank two more Bud Lites. At about 12:30 a.m., she switched to Pepsi. She drank two Pepsis and a bottle of water before leaving the bar at

2:00 a.m.  She then began receiving more argumentative texts from her friend.  She testified that she was weaving because she was texting while she was driving.

{¶11}  Appellant was convicted on both charges.  The court sentenced her to 180 days in the Richland County Jail with 150 days suspended.  Appellant was permitted to attend the jail alternative program, was fined $500 and was placed on a two-year license suspension and one year of reporting probation.  On April 29, 2011, the court granted the State's motion for special prosecutor costs.

{¶12}  Appellant assigns five errors on appeal:

{¶13}  "I. THE TRIAL COURT ERRED WHEN IT FAILED TO QUALIFY HER WITNESS AS AN EXPERT FOR THE HEARING ON ROBERTSON'S MOTION TO SUPPRESS AND/OR LIMIT THE USE OF EVIDENCE.

{¶14}  "II. THE TRIAL COURT ERRED WHEN IT DENIED ROBERTSON'S MOTION TO SUPPRESS AND/OR LIMIT THE USE OF EVIDENCE BECAUSE THE STATE FAILED TO SHOW SUBSTANTIAL COMPLIANCE WITH NHTSA STANDARDS.

{¶15}  "III. THE TRIAL COURT ERRED IN RESTRICTING ROBERTSON'S COUNSEL FROM ELICITING TESTIMONY FROM HER EXPERT AND FOR ALLOWING THE STATE TO ELICIT TESTIMONY FROM THE ARRESTING OFFICER AS TO HIS OPINION REGARDING THE CORRELATION BETWEEN HGN CLUES AND THE PROBABILITY OF BAC.

{¶16}  "IV. THE JUDGMENT ENTRY ORDERING SPECIAL PROSECUTOR COSTS WAS IMPROPER AS NO SPECIAL PROSECUTOR WAS APPOINTED BY THE COURT.

**{¶17}** "V. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT ROBERTSON'S CONVICTIONS AND SAME WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I

**{¶18}** Appellant argues that the court erred in failing to find her witness, Attorney Jon Saia, to be an expert when testifying at the suppression hearing.

**{¶19}** At the suppression hearing, the trial court heard Saia's testimony, but did not determine at that time whether Saia qualified as an expert witness. The court allowed Saia to testify at length regarding his opinion that the HGN test was not administered in substantial compliance with NHTSA standards.

**{¶20}** The parties brief the issue of the qualification of the witness after trial, and the trial court ruled as follows:

**{¶21}** "This matter came before the Court on Plaintiff's Motion to Preclude defendant's expert, Jon Saia, from testifying due to Saia not being a qualified expert for field sobriety tests. Plaintiff's motion is hereby denied. This Court allowed his testimony but does not deem him an expert as other Courts have so done. Saia's testimony is allowed for the limited purpose it provided." Judgment Entry, December 8, 2010.

**{¶22}** Appellant cannot demonstrate prejudice from the court's failure to qualify Saia as an expert. The court overruled the State's motion to exclude Saia's testimony and considered the testimony. Further, the court allowed Saia to testify as an expert in front of the jury at trial. Appellant has not demonstrated that she was prejudiced in any way by the court not declaring Saia to be an expert for purposes of his testimony at the

suppression hearing where the court allowed his testimony to be admitted at the hearing and allowed him to testify as an expert witness at trial.

{¶23}  The first assignment of error is overruled.

II

{¶24}  In her second assignment of error, appellant argues that the court erred in overruling her motion to suppress the HGN test results.  She argues that the State did not indicate which NHSTA manual it was submitting into evidence to show substantial compliance, that the officer did not substantially comply with NHSTA standards by conducting the test in a seated position in the cruiser where he possibly could not "square up" with appellant, and that the officer improperly made two passes to each eye instead of one motion across both eyes.

{¶25} Appellant failed to object to the admission of the manual at the suppression hearing.  Tr. 40.  Appellant cannot claim error in admission of the manual where she failed to object, and appellant makes no claim of plain error.

{¶26} The trooper testified at the hearing concerning the manner in which he conducted the HGN test.  Based on the officer's testimony as to how he conducted the test, appellant's witness then testified that there are 10 administrative procedures to the administration of the HGN.  He testified that the trooper failed to check for resting nystagmus, failed to check for equal tracking of the eyes.   He testified that the trooper did check for lack of smooth pursuit, but performed the procedure incorrectly by failing to do a complete sweep across appellant's face.  He further testified that the trooper performed the procedure incorrectly in that after seeing nystagmus prior to 45 degrees, he should have checked the angle of onset to see what that angle would have been and

should have stopped to make sure nystagmus was sustained at that angle instead of taking the pen on out to 45 degrees. He also testified that it is difficult to conduct the test properly in the front seat of a vehicle where the suspect has to turn to square up with the officer, and there are objects in the car which impede the administration of the test.

{¶27} The State presented no evidence to rebut the testimony of appellant's witness concerning the problems with the administration of the test.

{¶28} Assuming arguendo that the trooper did not conduct the test in substantial compliance with NHSTA standards, we find any error in admission of the test results to be harmless. As this Court has previously held:

{¶29} "In the case sub judice, although the trial court found appellant guilty of violating both R.C. 4511.19(A)(1) and R.C. 4511.19(A)(4), it convicted and sentenced appellant only on (A)(1). Assuming, arguendo, that the trial court erred in denying appellant's Motion to Suppress, we find that appellant has failed to establish that he was prejudiced by such error since the BAC test results are not necessary to establish a violation of R.C. 4511.19(A)(1). Appellant has not raised a weight of the evidence assignment relative to the evidence supporting his conviction for violating R.C. 4511.19(A)(1). Accordingly, even if the trial court erred in denying appellant's Motion to Suppress, such error would be harmless. See *State v. Stack* (Dec. 17, 1999), Licking App. No. 99CA00085, 2000 WL 1497." *State v. Kee*, 5th Dist. No. 04CAC09064, 2005-Ohio-4707, ¶29.

{¶30} In the instant case, appellant did raise a weight of the evidence assignment. However, there was abundant evidence independent of the HGN results to support her conviction.

{¶31} Captain Zurcher testified that he observed appellant make a wide turn, traveling up on to the curb and nearly striking a street sign. Captain Zurcher then observed appellant attempt to pass a car on the left, but her car remained 2-3 feet in the right lane, nearly striking the other car, which had to move to the right to allow appellant to pass. He observed appellant driving partially in the wrong lane for several hundred feet.

{¶32} Captain Zurcher activated his lights. Appellant did not react. He followed her for about a tenth of a mile before using his air horn. Appellant still did not react. Appellant was weaving inside her lane, but did not go left of center.

{¶33} When Captain Zurcher finally hit his siren to get appellant's attention, she swerved to the right, nearly hitting a pole. Captain Zurcher noticed a very strong odor of alcohol about appellant. Her eyes were bloodshot and her speech was slurred.

{¶34} While walking to the patrol car, the officer noticed that appellant walked with a slow and careful gait. Appellant admitted to him that she had consumed 4-5 alcoholic beverages that evening, and at trial she admitted that she consumed four Bud Lite beers.

{¶35} Appellant was taken to the Highway Patrol Post, where she refused a breath alcohol test. Trooper Scott Wolford who was at the station at the time noticed a strong odor of alcohol on appellant's breath.

**{¶36}** Further, appellant challenged the reliability of the HGN test at trial with expert testimony to demonstrate that the test was not conducted properly and the results were therefore not reliable. Based on the substantial evidence that she was driving under the influence of alcohol admitted at trial, any error in admitting the results of the HGN test is harmless.

**{¶37}** The second assignment of error is overruled.

III

**{¶38}** Appellant argues that the court erred in allowing the arresting officer to testify as to the correlation between HGN results and the probability of a BAC test over the legal limit because he was not qualified as an expert and such testimony was hearsay. She also argues that she was restricted from asking her expert questions on the same issue, and that her expert was prohibited from using his notes.

**{¶39}** The record does not reflect that Attorney Saia, the defense expert was prohibited from using notes.

**{¶40}** The admission or exclusion of relevant evidence lies within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph 2 of the syllabus (1987).

**{¶41}** The Ohio Supreme Court has held that an officer may not testify as to what a defendant's blood-alcohol content would be based solely on the HGN results:

**{¶42}** "Accordingly, a properly qualified officer may testify at trial regarding a driver's performance on the HGN test as to the issues of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol. See R.C. 4511.19(A)(1). However, such testimony may not be admitted to show what the

exact alcohol concentration level of the driver was for purposes of demonstrating a violation of R.C. 4511.19(A)(2), (3), or (4)." *State v. Breeson*, 51 Ohio St.3d 123, 130, 554 N.E.2d 1330, 1336 (1990).

**{¶43}** Captain Zurcher testified without objection by appellant that based on the HGN test alone, you can project a person's breath or blood alcohol content approximately 77% of the time. He testified that he found all six clues on the HGN test given to appellant, and that studies show that the quicker the onset of nystagmus prior to 45 degrees, the higher the blood alcohol content is. Tr. 56. Appellant objected to this testimony. Zurcher then testified that the onset was well before 45 degrees, and based on his education, training and experience, that indicates a higher level of alcohol. Tr. 57. Appellant objected.

**{¶44}** The instant case is distinguishable from *Breeson*, *supra*. Captain Zurcher did not testify as to the exact alcohol concentration level of appellant, and this was not a per se violation codified in the former R.C. 4511.19(A)(2), (3), or (4). In addition, the evidence was not hearsay. Appellant testified based on his own education, training and experience. Tr. 57.

**{¶45}** Further, appellant was permitted to introduce the expert testimony of John Saia to attack the manner in which Captain Zurcher conducted the HGN test. Saia testified that if the test is conducted properly, there is a 77% probability that the individual would test over .08 if given a breath or blood alcohol test. Tr. 63. He testified

that if the test procedures are not followed strictly, the percentage correlation cannot be determined. Tr. 64.[1]

**{¶46}** Appellant has not demonstrated that the court abused its discretion in admitting Captain Zurcher's testimony concerning the correlation of the HGN test results to potential BAC results, nor has she demonstrated that the court improperly restricted her expert's testimony on the same issue.

**{¶47}** Although none of this testimony would have been admissible had the HGN result been suppressed, as we noted in the second assignment of error, any error in its admission was harmless because there was substantial evidence of guilt aside from the HGN test results.

**{¶48}** The third assignment of error is overruled.

IV

**{¶49}** Appellant argues that the court erred in ordering special prosecutor fees to be paid because there is no judgment entry appointing a special prosecutor.

**{¶50}** On April 29, 2011, the trial court found that the special prosecutor had been involved in the case since October of 2008 and represented the State in pretrials and the suppression hearing on May 27, 2009. The court found his costs to be reasonable and pursuant to R.C. 2947.23(A) ordered appellant to pay the special prosecutor $4,880.99. R.C. 2947.23(A) provides in pertinent part:

**{¶51}** "A)(1) In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs

---

[1] While a motion to strike Saia's next answer concerning the validity of the test results was sustained, his answer to appellant's question concerning the impossibility of predicting a correlation to BAC results if the HGN test is not properly conducted remains in the record.

under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs."

**{¶52}** R.C. 2938.13 allows the city law director to delegate a prosecution to another attorney:

**{¶53}** "In any case prosecuted for violation of a municipal ordinance the village solicitor or city director of law, and for a statute, he or the prosecuting attorney, shall present the case for the municipal corporation and the state respectively, but either may delegate the responsibility to some other attorney in a proper case, or, if the defendant be unrepresented by counsel may with leave of court, withdraw from the case. But the magistrate or judge shall not permit prosecution of any criminal case by private attorney employed or retained by a complaining witness."

**{¶54}** The power of a court of common pleas or court of appeals to appoint a special prosecutor arises from R.C. 2941.63, although this statute does not refer to the appointment of a prosecutor in municipal court:

**{¶55}** "The court of common pleas, or the court of appeals, whenever it is of the opinion that the public interest requires it, may appoint an attorney to assist the prosecuting attorney in the trial of a case pending in such court. The board of county commissioners shall pay said assistant to the prosecuting attorney such compensation for his services as the court approves."

**{¶56}** The power to impose court costs must be statutorily granted. *Centennial Ins. Co. v. Liberty Mut. Ins. Co.,* 69 Ohio St.2d 50, 51, 430 N.E.2d 925 (1982). There are several statutes in Ohio which authorize courts to impose charges and fees in specific circumstances; however, there is no statute authorizing the assessment of

special prosecutor fees as court costs. The Court of Appeals for the 6th District found that a trial court erred in assessing special prosecutor's fees to the defendant as court costs:

{¶57} "Upon review of the applicable statutory and case law, we find that the trial court erred when it imposed the costs of the special prosecutor because Ohio does not have a specific statute authorizing the payment of such costs. We further note that, unlike reimbursement of an appointed defense attorney's fees (which is provided for by statute), ordering a defendant to pay the costs of the prosecuting attorney is a novel concept in Ohio." *State v. Perz*, 6th Dist. No. L-07-1330, 2008-Ohio-2383, ¶18.

{¶58} We agree with the reasoning of the *Perz* court. Ohio does not have a specific statute authorizing the assessment of special prosecutor fees to the defendant as court costs. While in the instant case the involvement of the special prosecutor was appropriate given appellant's employment with the Mansfield Police Department, nothing in the Ohio Revised Code allows the court to assess his fees to appellant as court costs.

{¶59} The fourth assignment of error is sustained.

V

{¶60} Appellant argues that the judgment convicting her of OVI was against the manifest weight and sufficiency of the evidence.

{¶61} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶62}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶63}** Appellant was convicted of violating R.C. 4511.19(A)(1)(a):

**{¶64}** "(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:

**{¶65}** "(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."

**{¶66}** Captain Zurcher testified that he observed appellant make a wide turn, traveling up on to the curb and nearly striking a street sign. Captain Zurcher then observed appellant attempt to pass a car on the left, but she remained 2-3 feet in the right lane, nearly striking the other car, which had to move to the right to allow appellant to pass. He observed appellant driving partially in the wrong lane for several hundred feet.

**{¶67}** Captain Zurcher activated his lights. Appellant did not react. He followed her for about a tenth of a mile before using his air horn. Appellant still did not react. Appellant was weaving inside her lane, but did not go left of center.

**{¶68}** When Captain Zurcher finally hit his siren to get appellant's attention, she swerved to the right, nearly hitting a pole. Captain Zurcher noticed a very strong odor of alcohol about appellant. Her eyes were bloodshot and her speech was slurred.

**{¶69}** While walking to the patrol car, the officer noticed that appellant walked with a slow and careful gait. She admitted that she had consumed 4-5 alcoholic beverages that evening, and at trial she admitted that she consumed four Bud Lite beers.

**{¶70}** Appellant was taken to the Highway Patrol Post, where she refused a breath alcohol test. Trooper Scott Wolford who was at the station at the time noticed a strong odor of alcohol on appellant's breath.

**{¶71}** The testimony of Zurcher, if believed by the jury, was sufficient to convict appellant of driving while intoxicated. Further, we do not find that the jury lost its way in convicting appellant. She admitted to consuming alcohol that evening and admitted to weaving while driving, although she claimed she was texting while driving.

**{¶72}** The fifth assignment of error is overruled.

{¶73} The April 29, 2011, judgment of the Mansfield Municipal Court ordering appellant to pay the special prosecutor fees is vacated.

{¶74} The judgment of conviction and sentence is affirmed.

By: Edwards, J.

Gwin, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/r0424

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| SHARI ROBERTSON | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 11CA0046 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Mansfield Municipal Court of Common Pleas the judgment of conviction and sentence is affirmed. The April 29, 2011, judgment ordering appellant to pay the special prosecutor's fees is vacated. Costs assessed to appellant.

_____

_____

_____

JUDGES