[Cite as *State v. Godoy*, 2019-Ohio-4625.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

| STATE OF OHIO | | C.A. No. 18AP0026 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| PETE J. GODOY | | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | | CASE No. 2017 TR-C 005564 |

DECISION AND JOURNAL ENTRY

Dated: November 12, 2019

TEODOSIO, Presiding Judge.

{¶1} Appellant, Pete Godoy, appeals from his convictions in the Wayne County Municipal Court. This Court affirms.

I.

{¶2} Sergeant Brad Bishop of the Ohio State Highway Patrol ("OSHP") responded to a crash call on Interstate-71 and encountered Mr. Godoy alone in a considerably damaged truck on the side of the road. According to the sergeant, Mr. Godoy admitted to drinking one beer at dinner hours earlier and exhibited several indicators of alcohol impairment. Mr. Godoy performed poorly on three field sobriety tests and was arrested for operating a vehicle while under the influence of alcohol ("OVI") and failure to control. He refused to submit to both breathalyzer and urine testing.

{¶3} According to Mr. Godoy, he was not under the influence of alcohol while driving that night, but medical issues and new prescription medication may have caused him to lose

consciousness while driving, which led to the accident. He set forth evidence that he suffered a concussion during the accident, and the concussion symptoms were misinterpreted by Sergeant Bishop as symptoms of alcohol impairment.

{¶4} Following a trial, a jury found Mr. Godoy guilty of OVI and the trial court found him guilty of failure to control. The court sentenced him to thirty days in jail for OVI, but suspended twenty-seven days and permitted Mr. Godoy to attend a three-day driver intervention program in lieu of serving three days in jail. The court further ordered a one-year license suspension and a $375.00 fine. It placed him on one year of community control and ordered twenty-four hours of community service. The court also ordered a $100.00 fine for failure to control. The court granted Mr. Godoy a stay of execution of his sentence.

{¶5} Mr. Godoy now appeals from his convictions and raises three assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE MANIFEST WEIGHT OF THE EVIDENCE DEMONSTRATED THAT APPELLANT EXPERIENCED A LOSS OF CONSCIOUSNESS BROUGHT ON BY A CARDIAC EVENT THAT CAUSED HIM TO LOSE CONTROL OF HIS VEHICLE AND CRASH, THEREBY RESULTING IN A CONCUSSION. APPELLANT WAS EXHIBITING SIGNS OF A CONCUSSION AS OPPOSED TO IMPAIRMENT BY ALCOHOL. THIS COURT, SITTING AS THE THIRTEENTH JUROR, MUST REVERSE THE TRIAL COURT'S JUDGMENT TO PREVENT A MANIFEST MISCARRIAGE OF JUSTICE.

{¶6} In his first assignment of error, Mr. Godoy argues that his OVI conviction was against the manifest weight of the evidence. Specifically, he claims the greater weight of the evidence supports his theory that he suffered a "cardiac event" while driving, lost consciousness, crashed his vehicle, and suffered a concussion, the symptoms of which Sergeant Bishop misidentified as alcohol impairment. We disagree.

{¶7}   This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.  This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  *See also Otten* at 340.

{¶8}   Mr. Godoy was convicted of OVI under R.C. 4511.19(A)(1)(a), which states: "No person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * the person is under the influence of alcohol * * *."  This Court has defined "under the influence" as "[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." *Akron v. Foos*, 9th Dist. Summit No. 28086, 2016-Ohio-8441, ¶ 5.  In determining whether a defendant was under the influence of alcohol, the jury may properly consider evidence of his appearance and behavior, including his ability to perceive, make judgments, coordinate movements, and safely operate a vehicle. *See State v. Moine*, 72 Ohio App.3d 584, 586-587 (9th Dist.1991).  Moreover, we have stated that, in OVI prosecutions, the state is not required to establish that a defendant was actually impaired while

driving, but need only show an impaired driving ability. *State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 6. To prove impaired driving ability, the state may rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired. *Id.* Furthermore, virtually any lay witness, without special qualifications, may testify as to whether an individual is intoxicated. *Id.*

{¶9} Sergeant Bishop testified that, on June 6, 2017, he was on duty and responded to a crash call on Interstate-71 in Wayne County. The sergeant's dash cam video of the incident that night was also entered into evidence. Sergeant Bishop testified that he arrived at the scene at 1:18 A.M. and saw Mr. Godoy's vehicle parked at an odd angle on the side of the road. The vehicle had substantial damage to the front end and the side airbags had been deployed. Mr. Godoy was still sitting in the driver's seat of the vehicle with his wallet out and credit cards and other information strewn about. The sergeant could hear through the vehicle's speaker system that Mr. Godoy was attempting to contact a wrecker through the American Automobile Association ("AAA"). He asked if Mr. Godoy was okay or if he was hurt, but Mr. Godoy said he was fine. Mr. Godoy told the sergeant he thought his tire blew out, so he pulled over and stopped. Sergeant Bishop testified that Mr. Godoy's eyes were glassy and bloodshot, and his speech was slurred. The sergeant detected a very strong odor of alcohol coming from Mr. Godoy.

{¶10} Sergeant Bishop testified that once Mr. Godoy exited his truck he was unsteady on his feet and had to put his hand on the sergeant's cruiser for balance. Mr. Godoy admitted to drinking one beer at dinner, sometime between 5:30 P.M. and 6:00 P.M. When the sergeant asked him if he knew the current time, Mr. Godoy believed it was only 10:00 P.M. Sergeant

Bishop had Mr. Godoy fill out a written crash statement, but his handwriting was poor and the sergeant could not decipher much of what was written. Prior to administering field sobriety testing, the sergeant asked Mr. Godoy if he had any medical issues that might affect his performance. Mr. Godoy said nothing was wrong with his eyes, but he was taking beta blockers that could affect his performance on some tests. Sergeant Bishop observed six out of six clues on the horizontal gaze nystagmus ("HGN") test, four out of eight clues on the walk and turn test, and two out of four clues on the one leg stand test.

{¶11} Mr. Godoy was arrested and transported back to the Ashland Highway Patrol Post, where he was read the BMV 2255 form, which explains the consequences for refusal to submit to chemical testing. Mr. Godoy refused both breath and urine testing, explaining that he could not reach his doctor at this early hour and was unsure how his beta blockers would react with the alcohol in his system.

{¶12} Dr. John Andrefsky is a neurologist who testified at trial that he examined Mr. Godoy on June 2, 2017, and diagnosed him with an "essential tremor." He prescribed Inderal, i.e., Propanol, which is a beta blocker used to control heart rate and blood pressure, as well as Ativan for anxiety. Dr. Andrefsky met with Mr. Godoy again on June 14, 2017, where Mr. Godoy informed him that he was involved in an automobile accident. Mr. Godoy reported feeling "clammy" and experiencing heart palpitations prior to the accident, "and the next thing he knew he woke up feeling confused." He had no recollection of the accident, but had a lump on his head and a headache. Lasting effects included blurred vision, nausea, dizziness, balance issues, poor concentration, and "word finding problems." The doctor diagnosed Mr. Godoy with "loss of consciousness, headache, memory loss, day time sleepiness, and concussion." After reviewing the police report and video, Dr. Andrefsky testified to a reasonable degree of scientific

certainty that it was his opinion the cause of the accident was a drop in blood pressure and loss of consciousness. He further testified to a reasonable degree of scientific certainty that it was his opinion Mr. Godoy suffered a concussion during the accident, based on his review of the video and the symptoms Mr. Godoy reported to him weeks later.

{¶13} Mr. Godoy testified at trial that he suffers from periodic heart arrhythmias and was diagnosed with a mitral valve prolapse around 2006. He recalled going to dinner at the Macedonia Applebee's sometime between 5:00 P.M. and 6:30 P.M. on the night of the accident, where he had a dry steak and a twelve-ounce Bud Light. He testified that he took his second dose of Propanol for the day around 9:30 P.M. He "maybe [did] some bills" for a half hour and then went for a drive when his "anxiety started to kick in * * *." During the drive, he testified that he started to feel "clammy" with some "chest discomfort." He continued to drive and "felt a sense of, like cold clamminess, sweaty, and that's it." He testified that he next woke up feeling discomfort in his ankle. His truck was "not startable," so he tried to contact AAA. Despite viewing the dash cam video where he tells the sergeant he thought his tire blew out, Mr. Godoy testified that to this day he still does not recall sensing a tire blow out. He claimed to never drink more than one or two drinks because it would affect his mitral valve prolapse, causing dehydration and worse palpitations. He recalled refusing to take the breathalyzer test because he was unsure how his new medication would affect the test results.

{¶14} Overall, two conflicting versions of events were presented at Mr. Godoy's trial. Although Mr. Godoy presented some evidence that he experienced a "cardiac event," which caused him to crash his vehicle and suffer a concussion, this Court has stated that "'[a] conviction may be upheld even when the evidence is susceptible to some possible, plausible, or even reasonable, theory of innocence.'" *State v. Russo*, 9th Dist. Summit No. 22768, 2006-Ohio-

2172, ¶ 27, quoting *State v. Cremeans*, 9th Dist. Summit No. 22009, 2005-Ohio-261, ¶ 7. "'[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Despite Mr. Godoy's innocent explanations for exhibiting symptoms of impairment that night, the State presented conflicting evidence that he showed signs of alcohol impairment because he was under the influence of alcohol at the time of the crash. Sergeant Bishop recalled Mr. Godoy's glassy and bloodshot eyes, slurred speech, a very strong odor of alcohol, unsteadiness on his feet, an admission to drinking a beer at dinner, and poor performances on three field sobriety tests. Also, although Mr. Godoy later told Dr. Andrefsky, and likewise testified at trial, that he felt clammy and had heart palpitations before waking up confused after the accident, Sergeant Bishop's testimony that Mr. Godoy told him he was fine and said he pulled his vehicle over because he thought he blew a tire was supported by the dash cam video of the incident. *See State v. Strebler*, 9th Dist. Summit No. 26405, 2013-Ohio-1775, ¶ 12 (overruling a manifest weight argument and specifically noting Appellant's insistence that he did not need medical assistance). The jury was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. This Court has consistently held that "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13.

{¶15} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that the jury, in resolving

any conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice. *See Otten* at 340. Mr. Godoy has also not demonstrated how this is an exceptional case where the evidence presented weighs heavily in his favor and against conviction. *See Thompkins* at 387.

{¶16} Mr. Godoy's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

TRIAL COUNSEL WAS INEFFECTIVE AND VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN HE FAILED TO MOVE THE COURT FOR A MISTRIAL AND/OR REQUEST INDIVIDUAL VOIR DIRE OF THE JURORS WHEN A JUROR VOLUNTEERED INFLAMMATORY COMMENTS THAT TAINTED THE JURY POOL AND PREJUDICED THE APPELLANT.

{¶17} In his second assignment of error, Mr. Godoy argues that he received ineffective assistance of counsel because "counsel failed to move for a mistrial, failed to move to dismiss the entire jury panel who heard the inflammatory comments, failed to demand the court conduct a thorough and comprehensive evaluation of possible prejudice to the jury, and failed to demand a specific curative instruction to the jury." We disagree.

{¶18} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Courts ordinarily refrain from second-guessing strategic decisions made by trial counsel, even where counsel's strategy was questionable and even though appellate counsel essentially argues that the case should have been defended differently. *State v. Jalowiec*, 91 Ohio St.3d 220, 237 (2001). *See also State v. Clayton*, 62 Ohio St.2d 45, 49 (1980) (noting that even debatable trial tactics will not constitute ineffective assistance of counsel). To prove ineffective assistance of

counsel, one must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland* at 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz,* 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

{¶19} During voir dire, a female member of the jury venire ("M.H.") interrupted the prosecutor's conversation with another potential juror to remark on a pill bottle that was purportedly on the defense table. She then stated, "Because if he's on meds and then he drank that's just dumb. Sorry. It's supposed to be an excuse to try to get out of it." Later, when defense counsel discussed with the venire possible reasons to refuse a breathalyzer test and asked if the panel could listen to the evidence before casting any judgment, he noted on the record that M.H. was "shaking [her] head no." She responded that it would be "ridiculous" to refuse a breathalyzer and then spend money on an attorney to "take my chances" at trial, and further proclaimed, "[J]ust open the darn thing and get it over with. This is silly." When defense counsel engaged her in further discussion, she remarked, "[Y]ou are really doing your job. You are in the right profession. * * * [Y]ou are good at b.s.'ing me." She immediately clarified, however, that her comment was meant as a compliment and said, "You are a good defense attorney." She claimed she was not trying to get out of jury duty, but was just being honest and wanted to be fair to Mr. Godoy by "sav[ing] everybody the hassle." She did not believe the evidence would change her mind in this particular case, but respected the jury system and

claimed she would be fine being on a jury for a different trial. Defense counsel did not object to any of these comments, nor did he ask the trial court to give any curative instructions. The trial court ultimately dismissed M.H. from the jury panel for cause.

{¶20} Mr. Godoy now argues on appeal that, due to M.H.'s comments, his trial counsel should have moved the court for a mistrial, moved to dismiss the entire jury panel, demanded the court to evaluate whether any prejudice occurred, and demanded a specific curative instruction. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "The decision as to whether to move for a mistrial is trial strategy." *State v. Wharton*, 9th Dist. Summit No. 23300, 2007-Ohio-1817, ¶ 44. Counsel's decision not to request a curative instruction also falls within the ambit of trial strategy. *See State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 111. Counsel may very well determine that a motion for mistrial would fail or that a curative instruction would draw more unwanted attention to the incident. *See State v. Moreland*, 9th Dist. Summit No. 27910, 2016-Ohio-7588, ¶ 74.

{¶21} Upon review of the record, we cannot conclude that M.H.'s comments during voir dire were so inflammatory or prejudicial as to require a mistrial, dismissal of the entire jury panel, further evaluation by the court, or curative instructions from the court. Mr. Godoy has also not demonstrated that any of these requests would likely have been granted or shown how M.H.'s comments prevented him from having a fair trial. M.H. was dismissed for cause and was therefore not on Mr. Godoy's jury during trial. Mr. Godoy directs us to questions posed to a witness ("Dr. Andrefsky") by several jurors during trial regarding the effects of drinking alcohol while taking the medication he prescribed to Mr. Godoy. Mr. Godoy presumes these questions were influenced directly by M.H.'s comments, but nothing in the record indicates that the jurors

would not have asked these questions of their own volition but for her comments. In fact, Sergeant Bishop testified that Mr. Godoy's explanation for not taking the breathalyzer test was that he was unsure how his beta blockers would react with the alcohol in his system. It is not unreasonable to presume this testimony led some jurors to question Dr. Andrefsky regarding the interaction between alcohol and the medicine he prescribed to Mr. Godoy. The jurors here all affirmed on the record their willingness to diligently inquire into and carefully deliberate this case to the best of their skill and understanding, without bias or prejudice. "Unless an appellant demonstrates otherwise, we should assume that the members of the jury followed their oaths and deliberated only upon the evidence adduced at trial." *State v. Durr*, 58 Ohio St.3d 86, 91 (1991). Mr. Godoy has not demonstrated otherwise in this case.

{¶22} Accordingly, Mr. Godoy's second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE TROOPER TO TESTIFY TO THE STATISTICAL LIKELIHOOD THAT APPELLANT WOULD TEST OVER POINT ZERO EIGHT BLOOD ALCOHOL CONTENT BASED ON THE RESULTS OF STANDARDIZED FIELD SOBRIETY TESTS.

{¶23} In his third assignment of error, Mr. Godoy argues that the trial court erred in permitting Sergeant Bishop to testify, based on horizontal gaze nystagmus ("HGN") field sobriety test results, as to the statistical likelihood that Mr. Godoy's blood alcohol content ("BAC") would be over the legal limit of .08 if tested. We disagree.

{¶24} This Court has consistently held that "'[t]he admission or exclusion of evidence rests soundly within the trial court's discretion.'" *State v. Powell*, 9th Dist. Lorain No. 12CA010284, 2017-Ohio-4030, ¶ 16, quoting *State v. Scheck*, 9th Dist. Medina No. 05CA0033-M, 2006-Ohio-647, ¶ 13. We therefore review a trial court's decision regarding the admission or

exclusion of evidence for an abuse of discretion. *Id.* An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶25} Sergeant Bishop testified as to his considerable training and experience, which included annual, OVI-specific training courses from the National Highway Traffic Safety Administration ("NHTSA") as well as "refresher classes" for NHTSA updates and "field training" with field sobriety tests. He testified extensively as to the NHTSA standards for administering the horizontal gaze nystagmus ("HGN") test, and affirmed that he followed those standards while administering the HGN test to Mr. Godoy on June 6, 2017. The sergeant testified that he observed six out of six possible clues from Mr. Godoy during the HGN test, including lack of smooth pursuit in both eyes, distinct and sustained nystagmus in both eyes, and onset of nystagmus prior to a forty-five degree angle in both eyes. The following exchange then occurred between the prosecutor and Sergeant Bishop during direct examination:

> Q: Does the NHTSA Manual indicate what, does that correlate to anything from the NHTSA manual?
>
> A: Right. So, what the NHTSA Manual states based off of that if you have a minimum of four clues, what that says is according to the NHTSA Manual there is [an] eighty-eight percent chance that that subject[']s blood alcohol content is above [.08] which is the per se level for Ohio.

Defense counsel immediately objected based on foundation. The trial court inquired, and Sergeant Bishop affirmed, that the percentage he testified to is contained within the NHTSA manual. The court then overruled the objection. Mr. Godoy now argues on appeal that the trial

court erred in permitting this testimony as to the statistical likelihood that his BAC would be over the legal limit if tested.

{¶26} The Supreme Court of Ohio has held that "the HGN test has been shown to be a reliable test, especially when used in conjunction with other field sobriety tests and an officer's observations of a driver's physical characteristics, in determining whether a person is under the influence of alcohol." *State v. Bresson*, 51 Ohio St.3d 123, 129 (1990). The results of the HGN test are admissible so long as the proper foundation has been shown both as to the officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test. *Id.* at 128. Although HGN test results may be admissible at trial by a properly trained officer, the *Bresson* Court further noted that such an officer may not testify as to what he or she believes a driver's *actual or specific* BAC level would be, based solely on the HGN test results. *Id.* at 129. The high court thus concluded:

> [A] properly qualified officer may testify at trial regarding a driver's performance on the HGN test as to the issues of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol. See R.C. 4511.19(A)(1). However, such testimony may not be admitted to show what the *exact* alcohol concentration level of the driver was for purposes of demonstrating a violation of R.C. 4511.19(A)(2), (3), or (4).

(Emphasis added.) *Id.* at 130.

{¶27} Ohio appellate courts have interpreted *Bresson* in various ways. The Fourth and Tenth Districts admittedly found an officer's testimony as to the statistical probability that a person would test over the legal BAC limit based on HGN test results problematic, but nonetheless determined that because such testimony does not suggest an actual, specific, or exact alcohol concentration, and other evidence presented at trial indicated the person was under the influence of alcohol, any error in the admission of such testimony regarding statistical probabilities is harmless. *See State v. Martin*, 4th Dist. Pickaway No. 04CA24, 2005-Ohio-1732,

¶ 29, 37-39; *State v. Allen*, 10th Dist. Franklin No. 09AP-853, 2010-Ohio-4124, ¶ 24. *See also* Crim.R. 52(A) (stating "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded" as harmless). The Second and Fifth Districts did not note such testimony as being problematic, but instead concluded that it is permissible when the officer does not testify as to an "exact" BAC level. *See State v. Banks*, 2d Dist. Greene No. 2014-CA-11, 2014 WL 6852108, *5 (Dec. 5, 2014); *State v. Robertson*, 5th Dist. Richland No. 11CA0046, 2012-Ohio-2955, ¶ 44. The First District, however, has concluded that such testimony regarding statistical probabilities is highly prejudicial and improperly admitted in the absence of expert testimony. *See State v. Grizovic*, 1st Dist. Hamilton No. C-070563, 2008-Ohio-3162, ¶ 14-17. Furthermore, the admission of such testimony does not amount to harmless error, even when considering other evidence presented at trial. *Id.* at ¶ 17.

{¶28} In *State v. Filip*, this Court acknowledged a concern with the admission of such testimony, but nonetheless concluded that even if the testimony was inadmissible it would be difficult to find prejudice, due in part to the fact that defense counsel revisited that same testimony on cross-examination and confirmed the statistical probabilities at issue. *State v. Filip*, 9th Dist. Medina No. 16CA0049-M, 2017-Ohio-5622, ¶ 51. As in *Filip*, Mr. Godoy's counsel revisited Sergeant Bishop's statistical testimony during cross-examination and confirmed that the numbers he testified to came from the NHTSA manual, specifically a field validation study conducted in San Diego in 1998. Counsel then engaged the sergeant in a discussion as to the "original" research conducted by NHTSA in 1977 or 1981, which yielded lower percentages. Sergeant Bishop explained that the data changed when the legal BAC limit was lowered. Counsel tried unsuccessfully to elicit further testimony regarding a more recent study conducted in 2007.

{¶29} The State also introduced a wealth of other evidence indicating Mr. Godoy's impairment in this case, including the dash cam video and Sergeant Bishop's testimony that Mr. Godoy had glassy and bloodshot eyes, slurred speech, a very strong odor of alcohol, and unsteadiness on his feet. He further admitted to drinking a beer at dinner, he performed poorly on three field sobriety tests, and he refused to take breathalyzer or urine tests. The trial court also instructed the jury that:

> [T]he question is not how much alcohol would affect an ordinary person. The question is what effect did any alcohol, consumed by the defendant, have on him, at the time and place involved. If the consumption of alcohol so affected the nervous system, brain, or muscles so as to impair, to a noticeable degree, his ability to operate the vehicle, then the defendant was under the influence.

{¶30} Thus, consistent with our precedent in *Filip*, we cannot conclude that, under the facts of this particular case, the admission of Sergeant Bishop's testimony as to the statistical probability a person will test over the legal limit based on HGN test results prejudiced Mr. Godoy's substantial rights. *See Filip* at ¶ 53, citing Crim.R. 52(A).

{¶31} Mr. Godoy's third assignment of error is overruled.

III.

{¶32} Mr. Godoy's first, second, and third assignments of error are all overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

MICHAEL CALLOW, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.