[Cite as *State v. S.H.*, 2020-Ohio-3076.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

v.

S.H.

    Appellant

C.A. No.    19CA0046-M

APPEAL FROM JUDGMENT
ENTERED IN THE
MEDINA MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE No.    18 TRC 00576

DECISION AND JOURNAL ENTRY

Dated: May 26, 2020

CALLAHAN, Presiding Judge.

{¶1}    Appellant, S.H., appeals her convictions by the Medina Municipal Court. This Court affirms.

I.

{¶2}    On January 20, 2018, at approximately 2:45 a.m., Trooper Jeffrey Carpenter, who was driving north on Interstate 271, noticed a vehicle traveling in the southbound lanes "at a high, high rate of speed." From the crossover, Trooper Carpenter visually estimated that the vehicle was traveling 100 miles per hour. He confirmed his estimate using radar as the vehicle approached, then started to slow down. Trooper Carpenter followed the vehicle as it continued to slow as he waited to find a safe location to initiate a traffic stop. By the time he did so, the vehicle had slowed to approximately the speed limit. Once stopped, Trooper Carpenter approached the vehicle, and when the driver rolled down the window, he noted that her face was flushed; that she had red, glassy, bloodshot eyes; and that a "[s]trong" odor of alcohol emanated from the vehicle.

{¶3}    Trooper Carpenter asked the driver, S.H., to step from the vehicle so that he could conduct field sobriety tests.  When Trooper Carpenter asked whether S.H. had any medical conditions that he should be aware of, she mentioned only that she had gotten glass in an eye as a result of an accident.  She did not indicate that she was unable to perform the tests.  During the tests, Trooper Carpenter noted that S.H.'s behavior was "erratic" and "[a]rgumentative," and he requested the assistance of another trooper.  When he finished conducting the tests, Trooper Carpenter arrested S.H. for suspicion of driving while intoxicated and transported her to the Medina Highway Patrol post to administer a breathalyzer test.  Despite multiple attempts, S.H. did not provide a sample that could be analyzed.

{¶4}    S.H. was charged with driving in excess of the speed limit in violation of R.C. 4511.21(D)(3) and with driving under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a).  Before trial, the State moved to exclude medical records and testimony related to S.H.'s treatment for bronchitis three months before the date in question.  The State also moved to exclude a 1991 police report related to an investigation of rape involving S.H. and related testimony, which S.H. alleged would explain her actions during the incident.  The trial court excluded all evidence pertaining to the rape investigation, concluding that it was irrelevant to the extent that it purported to demonstrate S.H.'s motive and that, to the extent it could be relevant in other regards, that it must be excluded under Evid.R. 403(A).  The trial court also excluded the medical records under Evid.R. 403(A), but concluded that S.H., who planned to testify, could "discuss whatever conditions were affecting her on the date of this event, which the [trial] [c]ourt deem[ed] to be relevant."

{¶5}    A jury found S.H. guilty of driving under the influence of alcohol, and the trial court found her guilty of speeding.  The trial court sentenced her to ten days in jail, suspended her

driver's license for one year, and imposed fines of $442 and $150. The trial court stayed execution of the sentence, and S.H. filed this appeal.

## II.

### ASSIGNMENT OF ERROR NO. 1

THE LOWER COURT ERRED AND DENIED THE APPELLANT DUE PROCESS OF LAW AND A FAIR TRIAL WHEN IT LIMITED HER ABILITY TO PRESENT A COMPLETE DEFENSE[.]

**{¶6}** In her first assignment of error, S.H. argues that the trial court erred by excluding her medical records and all testimony and records related to the rape investigation from 1991. Specifically, she argues that the trial court's decision prevented her from presenting a complete defense. This Court does not agree.

**{¶7}** Although the Constitution guarantees that criminal defendants must have a meaningful opportunity to present a complete defense, that right is not unlimited and is subject to reasonable restrictions. *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 59, quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) and *United States v. Scheffer*, 523 U.S. 303, 308 (1998). *See also State v. Swann*, 119 Ohio St.3d 552, 555, 2008-Ohio-4837, ¶ 13 (noting that the right to present a defense "is not absolute and does not require the admission of *all* evidence favorable to the defendant.") (Emphasis in original). "[S]tates have a legitimate interest in ensuring that triers of fact are presented with reliable evidence and have 'broad latitude under the Constitution to establish rules excluding evidence from criminal trials' to further that goal." *Wesson* at ¶ 59, quoting *Scheffer* at 308. A defendant does not have an "unfettered right" to present evidence that is "incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). As long as the relevant evidentiary rules are not arbitrary or disproportionate to the interests they are intended to serve and do not

"'infringe[] upon a weighty interest of the accused,'" they do not abridge the right to present a complete defense. (Emphasis in original.) *Wesson* at ¶ 59, quoting *Scheffer* at 308. A defendant's right to present a defense is not unconstitutionally infringed when the trial court properly excludes evidence under Evid.R. 403. *See*, *e.g.*, *State v. Barnett*, 2d Dist. Montgomery No. 27660, 2018-Ohio-4133, ¶ 46-50. *Compare Holmes v. South Carolina*, 547 U.S. 319, 326-327 (2006) (noting that Fed.R.Evid. 403 is a "well-established rule[] of evidence" that serves legitimate purposes and is not disproportionate to serving those ends.).

{¶8} Under Evid.R. 403(A), otherwise relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The exclusion of relevant evidence under Evid.R. 403(A) rests within the discretion of the trial court. *State v Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107, citing *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. When considering a trial court's decision to exclude evidence under Evid.R. 403(A), this Court is "mindful that 'the exclusion of evidence under Evid.R. 403(A) is even more of a judgment call than determining whether the evidence has logical relevance in the first place.'" *State v. Thompson*, 9th Dist. Wayne No. 15AP0016, 2016-Ohio-4689, ¶ 25, quoting *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 40. Fundamentally, however, this Court is mindful that "[e]rror may not be predicated upon a ruling which * * * excludes evidence unless a substantial right of the party is affected[.]" Evid.R. 103(A). *See also State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62 (noting that "a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice.").

{¶9} The trial court excluded S.H.'s medical records from October 2017, but permitted her to testify about physical problems that affected her at the time of the incident. In doing so, the

trial court explained that the records were remote in time from the incident and bore no direct relationship to the offenses at issue, which, given the circumstances, would mislead the jury. S.H. was charged with driving under the influence of alcohol and with speeding, and she proffered her medical records for the purpose of providing an explanation regarding why she was unable to complete a breathalyzer test. In addition, however, the trial court ruled that "[i]f [S.H.] has an alternative explanation for why she behaved the way she did on the date of this offense, she is perfectly well entitled to present that to the court." Based on that conclusion, the trial court reasoned that S.H. would not be prejudiced by exclusion of the evidence.

{¶10} S.H. did, indeed, testify that she had been treated for acute bronchitis and bronchial spasms the previous October, had been prescribed antibiotics and an inhaler, and continued to suffer breathing difficulties on the night of the incident. Specifically, she testified that she had a hard time breathing once she was placed in the back of the cruiser and that when she attempted to provide a breath sample, her "lungs were filled with phlegm and it was hard for [her] to blow." In addition to S.H.'s testimony, the jury viewed the dashboard camera video of the stop, which documented her physical appearance and behavior at the scene. With respect to S.H.'s medical records, therefore, this Court cannot conclude that, even if the exclusion of the records was in error, Ms. Hannah suffered material prejudice. *See Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, at ¶ 62; Evid.R. 103(A).

{¶11} The trial court also excluded both a police report and any testimony related to a rape investigation that dated to 1991. Although S.H. appears to frame this issue in terms of a limitation of her right to cross-examination, her proffer clarified the purposes for which she proposed introducing this evidence:

> Well, my client would have testified when she was arrested and being frisked by
> Trooper Carpenter, she was having flashbacks to when she was attacked in 1991 by

the man that kidnapped her and raped her and was using his hands to rape her. And when she was frisked and bent down over the hood of the trooper's car, she was having flashbacks and memories of that incident and that's why she was reacting the way she was reacting. That will be shown in the videotape, which I'm sure [the State] [is] going to claim that she's acting erratically because she's under the influence of alcohol.

So that is a direct response to that, how she was reacting to that particular trooper frisking her, patting her down, and putting her against the hood of the car with the assistance of Trooper Betzel. So I think it goes directly to that issue, as well [as] the issue as to why she behaved the way she did in going past that rest area - - or approaching the rest area.

When S.H. renewed her objection to the trial court's ruling, she offered further explanation:

Trooper Carpenter * * * offered an explanation yesterday as to why my client was speeding, and I believe his testimony was * * * that my client stated that she wanted to see how fast the car would go. Well, that's not correct.

My client's testimony would be she was speeding because of the incident I described yesterday, where she was kidnapped from the rest area and raped at knifepoint, and because of that, she has a traumatic flashback experience when she nears that rest area, and that's why she speeds up the car.

So for that reason, I think it's even more relevant, and for the reasons I said before, to refute or rebut what Trooper Carpenter said was the reason she was speeding that he offered yesterday during his testimony.

In other words, S.H. proffered this evidence for the purpose of offering an alternative explanation for her speed when Trooper Carpenter initiated the traffic stop and for her behavior during the moments of her arrest and search.

{¶12} The trial court granted the State's motion in limine, noting first, that S.H.'s motivation for speeding was irrelevant as to her mental state, motive, and voluntariness. The trial court also reasoned that "to the extent that [the evidence] has any probative value on any issue that is before the Court, the Court believes that the minimum probative value is substantially outweighed by the issues of unfair prejudice, distraction of the Jury, misleading them on issues that have nothing to do with establishing whether these strict liability offenses were committed."

{¶13} Trooper Carpenter testified that according to both his visual estimate and his radar readings, the vehicle driven by S.H. was traveling approximately 100 miles per hour as she approached his location. Although he testified that S.H. was "not compliant" during the search incident to her arrest, this testimony came in the context of his description of S.H.'s behavior during the entire course of the stop. According to Trooper Carpenter, S.H.'s behavior did not become noncompliant at the point of the arrest and search, but was consistently "[a]rgumentative" and "erratic" throughout the traffic stop and field sobriety tests, which she did not successfully complete. The dashboard camera recording of the stop supports Trooper Carpenter's description of the events. The probative value of the evidence proffered by S.H., which was addressed only to a short time frame in the course of the traffic stop, was therefore limited.

{¶14} S.H. denied that she was traveling 100 miles per hour and stated that her speed was 80 miles per hour when she looked at her speedometer. She testified that she "always speed[s] up in that area[,]" but she denied that she told Trooper Carpenter that she did so in order to see how fast her car could travel. In that regard, she testified during her cross-examination that she would not have done so because her car had been having mechanical problems and that she did not believe that her car could travel at 100 miles per hour. She testified that she "started having a panic attack[]" during the arrest, but also explained that she had difficulty breathing once she was placed in the cruiser because of her lingering lung problems.

{¶15} As with the medical records, this Court concludes that even assuming error on the part of the trial court in excluding the evidence of the rape investigation under Evid.R. 403(A), S.H. has not demonstrated that she was materially prejudiced. *See Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, at ¶ 62; Evid.R. 103(A). Evid.R. 403 does not unconstitutionally infringe a defendant's right to present a defense, and S.H. has not demonstrated that error in the trial court's

decision, if any, was prejudicial. Consequently, she has not demonstrated that the trial court's decision was not a reasonable restriction on her ability to present evidence. *See Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, at ¶ 59, quoting *Crane*, 476 U.S. at 690, and *Scheffer*, 523 U.S. at 308.

{¶16} S.H.'s first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

THE LOWER COURT ERRED AND DENIED THE APPELLANT A FAIR TRIAL WHEN IT PERMITTED UNSUBSTANTIATED AND SPECULATIVE STATISTICAL TESTIMONY BY A STATE TROOPER REGARDING THE PROBABILITY OF THE APPELLANT'S GUILT[.]

{¶17} In her second assignment of error, S.H. argues that the trial court erred by permitting Trooper Brandon Betzel to testify about research that defined a statistical connection between the results of field sobriety testing and prohibited levels of alcohol content in the body. This Court concludes that even if the trial court erred in this respect, any such error was invited.

{¶18} "The Supreme Court of Ohio has held that 'the HGN test has been shown to be a reliable test, especially when used in conjunction with other field sobriety tests and an officer's observations of a driver's physical characteristics, in determining whether a person is under the influence of alcohol.'" *State v. Godoy*, 9th Dist. Wayne No. 18AP0026, 2019-Ohio-4625, ¶ 26, quoting *State v. Bresson*, 51 Ohio St.3d 123, 129 (1990). Nonetheless, an officer may not testify that a defendant is believed to have a certain chemical concentration of alcohol based on the results of field sobriety tests alone. *Bresson* at 129-130. Related concerns arise when an officer testifies that it is statistically probable that a defendant's alcohol concentration is in excess of the legal limit based on the outcome of field sobriety tests. *See*, *e.g.*, *State v. Grizovic*, 177 Ohio App.3d 161, 2008-Ohio-3162 (1st Dist.). This Court has recognized that such testimony is concerning. *See Godoy* at ¶ 28, citing *State v. Filip*, 9th Dist. Medina No. 16CA0049-M, 2017-Ohio-5622, ¶ 51.

Nonetheless, we have also noted that when such testimony is offered, it may be difficult to find error prejudicial. *Godoy* at ¶ 28, citing *Filip* at ¶ 51.

{¶19} Moreover, under the invited error doctrine, a defendant may not "'take advantage of an error which he himself invited or induced.'" *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 279, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. "'A litigant cannot be permitted, either intentionally or [unintentionally] to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.'" (Alteration in original.) *State v. Grether*, 9th Dist. Summit No. 28977, 2019-Ohio-4243, ¶ 27, quoting *State v. Ealy*, 10th Dist. Franklin No. 15AP-600, 2016-Ohio-1185, ¶ 30.

{¶20} S.H. has argued that the trial court abused its discretion by permitting Trooper Betzel, who arrived at the scene of the traffic stop in response to Trooper Carpenter's request for assistance, to testify about the probability that an individual is above the legal limit based on the individual's performance on field sobriety tests. Specifically, Trooper Betzel testified that with respect to the one-legged stand test, "we're instructed that two of eight clues on the walk-and-turn test gives us about a seventy-nine percent probability of * * * at least a .08 or higher BAC level." In connection with S.H.'s performance on the test, he testified that "with the two of four clues that we observed, that gives us a probability that we've been trained on. That's about eighty-three percent."

{¶21} The context for Trooper Betzel's testimony extends to the previous day of the two-day trial and the testimony of Trooper Carpenter. During his cross-examination, defense counsel posed the following question:

> Now, isn't it a fair statement, Trooper Carpenter, you have pulled over motorists
> for one reason or another that's led to an OVI investigation where you've

subsequently conducted field sobriety tests? You've had motorists show six out of six clues on the HGN, then you go back to the police station and administer the breath test and they've tested under .08, correct?

The State objected to this question on the basis of relevancy. Defense counsel responded:

Judge, it's relevant because that's what the HGN is designed to detect. It's designed to show whether or not the likelihood of somebody testing over .08. That's what it's designed to show.

After the trial court overruled the State's objection, defense counsel continued along the same lines, with the apparent goal of challenging Trooper Carpenter's testimony that he observed evidence of impairment during the field sobriety tests:

Q:      [Y]ou would agree with me that the field sobriety tests that they developed * * * were specifically designed to detect the likelihood that somebody would test over .08 or not, correct?

A:      When they were originally designed, they were designed for somebody who would test a .1 or higher.

Q:      Right. And then they lowered it to .08?

A:      Then they lowered it, correct, sir.

Q:      Okay. But those specific three tests were designed to determine the likelihood that a person would test over .08?

A:      Yes.

Q:      Meaning those tests specifically - - the field sobriety tests, the trial battery, specifically do not measure driving impairment, correct?

When Trooper Carpenter disagreed with Defense Counsel's characterization of the field sobriety tests, counsel followed with one further question:

Q:      Well, so you would disagree with the statement and the field validation study that, as a consequence, they pursued the development of tests that would provide statistically valid and reliable indications of a driver's BAC rather than indications of driving impairment? You would disagree with that?

A:      Yes and no.

Finally, on redirect, defense counsel directed Trooper Carpenter to studies referenced in the NHTSA Handbook that addressed the relationship between the field sobriety tests and alcohol concentration above the legal limit with reference to statistical probabilities.

{¶22} It is apparent that one of defense counsel's strategies was an attempt to demonstrate that an individual's performance on field sobriety tests is not probative of impairment. To accomplish this end, defense counsel sought specifically to establish that the purpose of field sobriety tests is to demonstrate a statistical probability that an individual's alcohol concentration is over the legal limit. Given this course of action on the part of defense counsel, any error on the trial court's part in permitting Trooper Betzel to testify along the same lines was induced by the defense, and under the invited error doctrine, this Court will not recognize it. *See Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, at ¶ 279; *Grether*, 2019-Ohio-4232, at ¶ 27.

{¶23} S.H.'s second assignment of error is overruled.

III.

{¶24} S.H.'s assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶25} I concur in the majority's judgment. However, with respect to S.H.'s first assignment of error, I would analyze the issue slightly differently. Instead of applying Evid.R. 103(A), I would apply the standard set forth in Crim.R. 52(A).

{¶26} "[I]f[, as here,] the defendant has objected to an error in the trial court, an appellate court reviews the error under the 'harmless error' standard in Crim.R. 52(A)[.]" *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 15. "Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: 'Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.'" *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 23. "Under [Crim.R. 52(A)], the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *Perry* at ¶ 15. "An appellate court must reverse

a conviction if the government does not satisfy this burden[.]" *Id.* A harmless-error analysis examines whether a defendant has suffered any prejudice because of the error. *Morris* at ¶ 25. In order to make that determination, "[b]oth the error's impact on the verdict and the weight of the remaining evidence must be considered on appellate review." *Id.*

{¶27} Given the evidence before the trial court, I agree that the record establishes that any error was harmless. Accordingly, I concur in the majority's judgment.

APPEARANCES:

ROBERT A. DIXON, Attorney at Law, for Appellant.

GREGORY HUBER, Prosecuting Attorney, for Appellee.